Eisenhauer *v.* New York Life Insurance Company, Appellant.

Argued October 28, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*J. A. Welsh,* for appellant.

*Carl Rice,* of *Witmer & Rice,* with him *Samuel Gubin,* for appellee.

OPINION BY JAMES, J., January 29, 1937:

The New York Life Insurance Company, appellant, on various dates issued to Homer Eisenhauer, appellee, six policies of life insurance, each containing, in part, the following disability clause: "Disability shall be considered total whenever the insured is so disabled by bodily injury or disease that he is wholly prevented from performing any work, from following any occupation, or from engaging in any business for remuneration or profit ......" Under this provision, assured furnished due proof that he was totally and permanently disabled as of May 27, 1929, which proof was accepted by appellant. Payment of disability benefits, including waiver of premiums under the six policies, was made from August 27, 1929 to November 27, 1933, when the payments were discontinued. Suit was brought for the disability benefits due, and for premiums paid during the period from November 27, 1933 to July 27, 1934. The insurance company defended on the ground that during the period for which disability was claimed, assured was no longer totally disabled as defined in the policies of insurance. Appellee alone submitted testimony. Appellant's point for binding instructions was refused and the jury found for the plaintiff. Motions for a new trial and judgment non obstante veredicto were refused, judgment was entered on the verdict, and this appeal followed.

Appellant's assignments of error raise the sole question whether the testimony was sufficient to justify the verdict. We shall attempt to briefly narrate the testimony adduced by the appellee. At the time of trial, the assured was 47 years of age, the owner of a grocery

store, in which business he had been engaged since early youth. On May 27, 1929, he was afflicted with a streptococcus infection of the throat and several days later was taken to a nearby hospital where he was confined for several weeks, and then returned home. He returned to the hospital several times and was later sent to a hospital in Philadelphia, for observation. From the date of the original infection to the date of the trial, plaintiff has been attended by at least six physicians, spent twelve weeks in a sanatorium, seven months in Florida, and is still undergoing medical treatment. Since assured's affliction, the store has been conducted largely under the managership of assured's brother. Since November 1933, assured has been going to the store several days each week for two or three hours, and while at the store he would occasionally indorse checks, make change, take deposits to the bank; but was unable to carry on any serious discussion as to the conduct of the business, and at no time has he been able to perform any work. When at the store, he practiced penmanship as his illness had seriously affected his ability to write. He occasionally drove his automobile and at times rode with friends, but was unable to walk for any distance. His mother lived over the store, and when he went to the store he usually visited her. Any effort made by the appellee usually resulted in exhaustion or collapse. Dr. Leavitt, one of the appellee's physicians, testified that appellee "was suffering with a nervous disorder, a functional nervous disorder, which we call a neurosis, which was of the type of anxiety, psychasthenia, which is essentially a functional disease of a person's will, which is a state of mind that it causes him to be unable to carry any mental task to a conclusion because of the development of a fear, which is exhibited by increasing nervous tension." Although he found no organic disease, assured was suffering from a functional disease.

He was able to "do labor that requires gross movements but because of his nervous condition it is quite impossible for him to carry any of them to a successful conclusion." This doctor was of the opinion that appellee was not able to engage in any gainful occupation. His testimony was supported by assured's family physician, who had treated assured from the date of his affliction to the date of trial.

The meaning of the term "total disability" has been construed by our courts in several recent cases. In *Cantor v. Metropolitan L. Ins. Co.*, 108 Pa. Superior Ct. 1, 6, 164 A. 145, this court said: "The term 'totally disabled' is not used in a sense of absolute helplessness, mentally and physically." "While the words of the policy must receive reasonable construction and, literally interpreted, the words total disability to engage 'in any and every occupation of employment for wage or profit' would require that an insured be a helpless invalid before he would be entitled to benefits under the policy, this cannot be what the parties intended ...... A reasonable interpretation of the words of the policy is, that the total disability to engage in any occupation or work for compensation or profit which is insured against, means inability to perform any of the duties of any occupation which the insured might be ordinarily capable of performing": *Cooper v. Metropolitan L. Ins. Co.*, 317 Pa. 405, 408, 177 A. 43; *Amrovcik v. Metropolitan L. Ins. Co.*, 119 Pa. Superior Ct. 176, 180 A. 727.

Upon our examination of this record, we find sufficient testimony, which the jury believed, that assured was totally disabled within the terms of the policy. The performance of the minor acts relating to his business, done under the advice of his physicians, to bring about a restoration of health, cannot be clothed with such potency and importance as to constitute "performing any work," "following any occupation," or

"engaging in any business" as defined by the disability provision. In *Cantor v. Metropolitan L. Ins. Co.,* supra, where we held the testimony to be sufficient to establish a total and permanent disability, the testimony was not as persuasive as in the case at bar.

Appellant attempts to distinguish the language of the present disability provision from the provisions which have been construed by our appellate courts, by emphasizing the language *"wholly* prevented from performing any work ......" (Italics supplied). We cannot see that the use of the word "wholly" adds any greater force than the use of the word "total," which is the word attempted to be defined. If the assured is totally disabled, it adds nought to the description if we say he was wholly disabled. A common definition of either word is "completely," but as we have, however, above stated, such disability does not mean absolute helplessness mentally and physically.

Nor are we impressed by appellant's argument that appellee had made no effort to follow any other business. It would seem to be idle for the assured to seek other business when he had one of his own, which he was unable to conduct or render any substantial and essential service therewith, owing to his functional disability. The testimony shows assured's sincerity in his efforts to regain his health and conduct his business; but up to the time of the trial, he had been unsuccessful.

The assignments of error are overruled and the judgment is affirmed.