## Moskowitz v. Prudential Insurance Company of America, Appellant.

Argued October 8, 1943. Before KELLER, P. J., BALDRIGE, STADTFELD, RHODES, HIRT, KENWORTHEY and RENO, JJ.

*Kendall H. Shoyer*, with him *Andrew C. Dana*, for appellant.

*Harry Norman Ball*, for appellee.

OPINION BY RENO, J., January 27, 1944:

Appellee recovered a verdict and judgment upon provisions in insurance policies [1] providing for total and permanent disability benefits. The company's motions for judgment n.o.v. and a new trial were overruled, and it appealed.

Appellee was found to be within the 60 year age-limit, and no point has been made here concerning that controversy raised in the court below. It is not dis-

---

[1] The total and permanent disability provisions of the two policies are identical, and the relevant portion follows: "Disability before Age 60: Waiver of Premiums—Monthly Income to the Insured.—If the Insured shall become totally and permanently disabled, either physically .or mentally, from any cause whatsoever, to such an extent that he ...... is rendered wholly, continuously and permanently unable to engage in any occupation or perform any work for any kind of compensation of financial value during the remainder of his ...... lifetime", etc.

puted that on July 3, 1941, appellee injured his right hand in a crumbing machine in his bakery establishment, and that it was amputated at the metacarpal joints with the exception of the thumb. The question is whether this injury has totally and permanently disabled him within the meaning of the terms of his policies.

In his insurance applications, appellee described himself as a "proprietor of bakery". He was born in Poland, educated in a Hebrew school, learned the baker's trade, came to America in 1900, and immediately found work at his trade. In 1908, he went into business for himself, and conducted bakeries at various places in Philadelphia and Camden until 1920, when he acquired the plant he was operating at the time of the accident. It has been a successful and prosperous bakery, equipped with modern, American ovens and new machinery, located in a building which contains a store for retail and wholesale trade and the living quarters of appellee and his family. He operates two daily shifts of employes in the bakery, and employs 21 persons in various capacities and for varying periods during the week. Before the accident appellee worked with his bakers, testing, kneading and punching dough, feeding the ovens, and performing other manual labor. He also managed and supervised the business, purchasing supplies, selling the products, hiring employes, and doing all the acts necessary for conducting the enterprise.

Since the accident, he has performed no work. Although he spends some part of each day in the store and bakery, he contributes virtually nothing to its operation. In his crippled condition, he could hardly be expected to resume the manual labors he previously performed. Nor has he engaged in the management and supervision of the business. These functions have been performed by his wife and daughter. Notwithstanding his withdrawal from activity, the business has

prospered and has produced net profits which compare favorably with those of prior years.

Appellant's contention is that appellee has not "been rendered wholly, continuously and permanently unable to engage in any occupation or perform any work for any kind of compensation of financial value". It argues that the evidence is insufficient to show that appellee is so disabled that he is unable to manage his own business, even though, since the accident, he has not done so.

The burden of proof is upon appellee and he is required to show "inability to perform any of the duties of any occupation which the insured might be ordinarily capable of performing": *Cooper v. Metropolitan Life Ins. Co.*, 317 Pa. 405, 408, 177 A. 43. "This does not mean that the insured must be a helpless invalid in order to become entitled to benefits under such a policy, nor is he barred from recovery because he may be able to perform a few trivial and desultory acts or light work of a limited character and at irregular intervals, but it does mean that it is not enough for the insured to show that he is unable to do a substantial part of his ordinary work": *Pearlman v. Metropolitan Life Ins. Co.*, 336 Pa. 444, 448, 9 A. 2d 432. Inability to perform the manual labor incident to the insured's own business does not establish total disability, if he can, notwithstanding his injury, manage and operate the business: *Catalona v. Prudential Ins. Co.*, 150 Pa. Superior Ct. 331, 28 A. 2d 349. "It is not essential that he should do, or be able to do, everything necessary to be done in its conduct": *Butler v. Metropolitan Life Ins. Co.*, 122 Pa. Superior Ct. 159, 161, 186 A. 395. Of course, an insurance company cannot conjure up some imaginary occupation for its insured and defend upon the phantasy of its own creation (*Feigenbaum v. Prudential Ins. Co.*, 144 Pa. Superior Ct. 412, 19 A. 2d 542), but, on the other hand, when an insured owns a business to which

he is able to contribute substantial physical and mental capacities, or either, he cannot be said to be totally disabled.

Appellee's testimony, and that of his witnesses, established that he was discharged from his physician's care on September 30, 1941, and since then he has not had the services of any physician. He experiences some pain in his hand "when the weather changes" or when he twists his hand, and he is obliged to sleep on his left side or upon his back. He returned from the hospital three weeks after his injury, and except for a few days directly after his discharge, he has not been confined to bed. He moves about freely without assistance and he spends his time in his shop, the bakery, the movies, and in a near-by synagogue. His mind is clear and his memory good. His wife testified that "he don't remember a thing," but his testimony, particularly the rigorous cross-examination, indicates that he had forgotten practically nothing about his business. He remembered the exact street addresses of the various places in which he had conducted his business through many years, the number of days each employe worked during the week, the abilities and wages of his employes, the shifts they worked on, the names of those who had left him, and other intricate details involved in the operation of his business. His physician, who was also his nephew, who had visited the bakery hundreds of times and knew the nature of the work performed there by his uncle, testified on direct examination, in answer to a hypothetical question, that appellee was not "able to perform any duties of any occupation which he might ordinarily be capable of performing." On cross-examination, he testified: "Q. Doctor, so far as you know, there is nothing to prevent him from managing and supervising the bakery, is there? A. You mean there is nothing to prevent him from being the manager of his bakery? Q. That is right. A. Not as far as I know."

Later he testified: "If he had been active and supervising them before, if he had supervised them before I should think he could supervise them well at least to some extent now."

Appellee testified: "Well, I am disgusted with the business. I give it away even today. If anybody would come and let me out of it I would be more than glad to get out of it." Asked whether he went into the bake shop, he replied: "No. *I don't want* to go even in the bake shop. ...... I don't want to go in even to look there ...... Unless it is that I don't know what to do with myself, then I go in." He said: "[I] can't do a thing [referring to physical work] and *I am not giving* orders." At no time did he testify that he could not give orders or perform other acts relating to the management of the business. The emphasis is always, in his testimony and his wife's, upon what he would not do, not upon what he could do. His wife testified: "Q. Couldn't he be there to supervise the men and see they did the work correctly? A. He has lost all his ambition. He *would not* go in there Q. That is the only reason? A. Well, he is disgusted. He says, I am tired of it, can't do nothing." (Italics supplied). He testified that he does not attend the meetings of the baker's association of which he is a member because he is not interested, "No interest in the business at all." And that is the nub of this case. Appellee has clearly demonstrated, not that he is incapable of managing his business, but that he will not do it. He is disgusted with the business and he deliberately *wills* to have no part in it. This is understandable. The loss of the hand has probably created a sense of frustration, and the constant consciousness of his inability to do all the things he had formerly done may have produced the desire to withdraw from all activity, and to do nothing. Such a mental attitude might, if psychopathological, afford a basis for finding, under the terms of the policy, that

an insured had become mentally disabled. But there is not a particle of proof upon the record to support that hypothesis. Appellee's only reason for his inactivity, his disgust with the business, will not support a recovery for a total and permanent disability.

He has not met the burden of proof. "In a *civil* case the evidence of facts and circumstances on which plaintiff relies and the inferences logically deducible therefrom, must so preponderate in favor of the basic proposition he is seeking to establish as to exclude any equally well supported belief in any inconsistent proposition": *De Reeder v. Travelers Ins. Co.*, 329 Pa. 328, 334, 198 A. 45. His own testimony disclosed that he can, but will not, perform a substantial and essential part of the managerial and supervisory duties incident to his business, and for that reason he cannot recover: *Cobb v. Mutual Life Ins. Co.*, 151 Pa. Superior Ct. 654, 30 A. 2d 611.

The judgment is reversed, and judgment is here entered for the appellant.