## Cobosco *v.* Life Assurance Company of Pennsylvania, Appellant.

Argued June 10, 1964. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*Morris J. Dean,* with him *David J. Dean,* and *Dean & Dean,* for appellant.

*Albert N. Danoff,* with him *Patrick J. Toole, Jr.,* and *Winkler, Danoff, Lubin and Toole,* for appellee.

OPINION BY MONTGOMERY, J., September 17, 1964:

Plaintiff-appellee recovered a jury verdict of $3,-258.50 (subsequently reduced to $2,900 by the filing of a remittitur of $358.50) on a claim based on a policy of health and accident insurance issued to her by defendant-appellant. This appeal is from the entry of judgment on the verdict as reduced after appellant's motions for judgment n.o.v. and for a new trial had been refused. Although appellant's counsel has devoted much of his brief in support of an argument for a new trial, we shall not consider this appeal as from a refusal of a new trial. Counsel for appellant advised the lower court of his withdrawal of the motion for a new trial and an order denying it was entered on that basis. Since the lower court did not pass on the reasons assigned by appellant for a new trial, we will not do so on appeal. When counsel seeks to have the appellate court consider matters which are not properly before it and counsel is fully aware of that fact, as it must have been in the present case, the real issues become obscure. Such efforts are not to be encouraged. The duty of attorneys is to assist the judges and not to render their tasks more difficult. *Rago v. Nelson,* 194 Pa. Superior Ct. 317, 166 A. 2d 88 (1960).

Although this action was instituted to recover benefits for total disability and a further sum for premiums alleged to have been mistakenly paid when in fact they had been waived under the terms of the policy, we are no longer concerned with the second claim inasmuch as appellee has filed a remittitur for the amount of same, which had been included in the verdict.

Factually, Mrs. Cobosco fell on October 29, 1960, in a restaurant near Stroudsburg and suffered a fracture of the right femur, which required an open reduction and the insertion of a Smith-Peterson nail. A

shortening of the right lower extremity resulted. After her discharge from the hospital she was walking with the aid of crutches in her home on December 24, 1960, when she fell and suffered another fracture of the same femur. On October 16, 1961, she fell for the third time and wrenched her right knee.

Appellant paid benefits to appellee as follows: Total disability, October 29, 1960, to August 24, 1961, in the sum of $2,699.98; partial disability, August 24, 1961, to October 16, 1961, in the sum of $173.33; total disability, October 16, 1961, to January 20, 1962, $626.66; partial, January 20, 1962, to February 20, 1962, $100; *partial*, February 20, 1962, to February 28, 1962, $26.67. The verdict included $2,900 for total disability payments from March 1, 1962, to May 15, 1963, at $200 per month. It is appellant's contention that the record does not support a finding that appellee's injuries caused "continuous total disability and total loss of time" as required by article IV of the policy, after January 20, 1962.

Appellant advances a second contention by which it denies responsibility for any disability after January 20, 1962. This contention is based on the theory that the policy lapsed because of nonpayment of the November, 1961 premium within the grace period allowed by the policy and that the subsequent acceptance of that payment constituted a "reinstatement" of the policy. The policy provided: "The reinstated policy shall cover only loss resulting from such accidental injury as may be sustained after the date of reinstatement and loss due to such sickness as may begin more than ten days after such date. In all other respects the insured and insurer shall have the same rights thereunder as they had under this policy immediately before the due date of the defaulted premium, subject to any provisions endorsed hereon or attached hereto in connection with the reinstatement."

This second contention is clearly without merit. Although the provision relied on may be effective as to claims arising during the period between a date of lapse and a date of reinstatement, it cannot apply to claims that have matured before the policy lapsed, as in the present case. 45 C.J.S. Insurance §897, page 977. However, as we view this record, there is no need for us to rule on this point since appellee's claim, whether partial, as recognized by appellant, or total, as contended by appellee, arose before any default in the payment of premiums.

It was appellee's position that her total disability was continuous from October 29, 1960, the date of her first accident, and that she was entitled to recover not only the benefits for total disability after March 1, 1962, but also the difference between what she received for partial disability during the aforesaid periods and the amounts that she should properly have received for total disability during said periods. Her claim for these differences was disallowed by the lower court as a matter of law on the ground that she had waived any additional claims by cashing the checks for partial disability. No complaint is presently being made by her on account of such action.

The only question in this case is whether the evidence is sufficient to support the finding of the jury that Mrs. Cobosco was totally disabled and suffered a total loss of her time from a gainful occupation during the period commencing March 1, 1962, and ending May 17, 1963, the date of the verdict.

The policy does not specifically define "continuous total disability and total loss of time." However, it defines "total disability" as being "co-extensive with the terms totally disabled, disabled and disability, and shall mean such inability of the Insured to perform duties of any gainful occupation for which he may be reasonably fitted by reason of training, experience and accomplishment."

In her application for this insurance Mrs. Cobosco is described as a hardware merchant with duties of "Manager, Supervisory." It is appellant's contention that appellee is not disabled from performing managerial and supervisory duties and other light duties in her store; and that, therefore, she is not totally disabled or subject to the complete loss of her time. Since Mrs. Cobosco is the verdict winner, we must read the record in the light most advantageous to her, resolve all conflicts in the evidence in her favor, and give her the benefit of every fact and inference of fact pertaining to the issues which reasonably may be deduced therefrom. *Murphy v. Bargain City, U.S.A., Inc.,* 203 Pa. Superior Ct. 406, 201 A. 2d 299 (1964). A review of the record on this basis reveals that prior to the first accident of October 29, 1960, Mrs. Cobosco was the sole proprietor of a hardware store which sold a variety of items, including pipe, appliances, and other heavy objects. Previously she had operated the business with the occasional help of her son, who made deliveries, and of another person, who helped to handle appliances. She personally attended to all other duties. The business was operated six days a week and was conducted on the first floor and basement of a building, the storeroom of which was 100 feet long and 25 feet wide. Mrs. Cobosco lived in a house immediately adjoining her store.

Since the period involved in this appeal is limited to that following March 1, 1962, we need not recite further Mrs. Cobosco's condition and activities prior to that date.

Mrs. Cobosco testified as to her condition and activities after March 1, 1962, that she discarded her brace and crutches in July of 1962, but continued with therapy treatments until January, 1963; that she saw her doctor infrequently and had pain in her leg as of the time of trial which was severe but occurred only

twice or three times a week for short periods of 15 to 20 minutes each; that until September, 1962, she visited her store only a few times a week while her son managed it, but after September, 1962, when he returned to school she attended it more, for an hour or more at times, several times a day, taking rest periods in between, and that from 3:30 to 6:00, her mother, sister, and a lady across the street attended it for her; that she could not sweep or clean, attend to window displays, drive the automobile or handle heavy articles; but she could wait on customers and handle small items.

Dr. Robert F. Babskie, who attended Mrs. Cobosco, testified as follows: "Q. And is it your opinion at the present time that Mrs. Cobosco is unable to do any physical labor in her store whatsoever? A. Well, it's my opinion that she is not able to do the sort of work which requires lifting, climbing a ladder, which is incident to her occupation. She cannot stand on her leg for any length of time. In general I would say she could do very light selling in the store, but certainly not any of the labor connected with working in a hardware store. Incident to this she cannot operate an automobile because of her foot drop, which further limits her disability in her hardware work. Q. What do you mean by supervisory work? You stated she could do supervisory work? A. By that I meant she could be in the store, *she could dictate policy, she could advise whoever worked in the store as far as the window displays were concerned, collect bills perhaps, make change. That was my intent as a supervisor. Q. I see, and would you say that that is your opinion today, that your opinion expressed in February of 1962 would be the same today? A. Well, I think she could do a little more than that, than supervisory work at the present time. I think she could do some light duties, but certainly not all of the duties which*

*requires taking care of a hardware store.* I feel that she can probably do some light retail selling and be on her feet for a longer time." (Emphasis supplied)

The only other specialized training that Mrs. Cobosco has ever had was as an elementary school teacher; but since she taught school for only four years about twenty-eight years ago and has neither a college degree nor a teaching certificate, she is not now qualified in that field.

The question of whether an insured has been totally and permanently disabled is ordinarily one of fact for a jury. *Janney v. Scranton Life Insurance Company,* 315 Pa. 200, 173 A. 819 (1934). However, a jury may not pass on such a question if the evidence does not justify its submission. *Moskowitz v. Prudential Insurance Company of America,* 154 Pa. Superior Ct. 362, 35 A. 2d 567 (1944); *Catalano v. Prudential Insurance Company of America,* 150 Pa. Superior Ct. 331, 28 A. 2d 349 (1942).

We are constrained to conclude that the evidence does not support the verdict. Appellee's disability is limited presently to her right leg and foot. She discarded her brace in August, 1962. She no longer uses crutches or other aids except a cane and has ceased to take therapy treatments. She lives within 25 feet of her business and she can perform supervisory and managerial duties and light manual tasks, including some selling, that may require her to be on her feet for longer periods of time. According to her doctor, it is advisable for her to perform such tasks. Admittedly she cannot operate the business personally with only occasional help, as she had done before her first accident. She may require more help; but there is much that she is capable of doing herself, which removes her from the class of the totally disabled.

There are numerous cases wherein we have held that persons capable of doing less than Mrs. Cobosco were not entitled to recover benefits for total disability

under similar policy provisions. In *Moskowitz* a baker who had been active in both the manual work of testing, kneading, and punching dough, as well as in extensive supervisory duties, before having his hand amputated, was held not totally disabled. This case was cited with favor by our Supreme Court in *Moskowitz v. Prudential Insurance Co. of America,* 355 Pa. 30, 47 A. 2d 648 (1946).

In *Catalano v. Prudential Insurance Company of America,* supra, the claimant, by reason of adhesions following an operation, was unable to perform any manual labor. We repeated the well-established rule, that, although total disability does not mean helplessness or complete disability, it includes more than that which is partial. We also noted that the manual labor which one may be unable to perform is not necessarily essential in the management and supervision of every business. However, when that manual labor is such as may be performed by others under supervision and instruction and is not peculiar to the injured claimant, we cannot say that total disability results from the inability to perform all of the manual tasks, where the power to perform part of them, as well as the power of supervision and management, remains. We have not seen any decision that distinguishes between a one-man business and a business that is operated by employes. In *Butler v. Metropolitan Life Insurance Company,* 122 Pa. Superior Ct. 159, 186 A. 395 (1936), claimant was totally unable to perform normal tasks but engaged in the management and supervision of another business. He was denied recovery for total disability. Also see *Cobb v. Mutual Life Insurance Company of New York,* 151 Pa. Superior Ct. 654, 30 A. 2d 611 (1943).

Appellee relies on *Schuchman v. Metropolitan Life Insurance Company,* 374 Pa. 48, 96 A. 2d 920 (1953); *Eisenhauer v. New York Life Insurance Company,* 125 Pa. Superior Ct. 403, 189 A. 561 (1937); *Kramer v.*

*Travelers Insurance Co.,* 111 Pa. Superior Ct. 367, 170 A. 700 (1934) ; and *Cantor v. Metropolitan L. Ins. Co.,* 108 Pa. Superior Ct. 1, 164 A. 145 (1933), to support her contention that the evidence was sufficient to present to the jury. We do not agree.

In *Schuchman* the assured had performed multifarious duties in his real estate office from 8 :00 a.m. to late afternoon before the accident. Thereafter he came into the office for an hour each day to open mail and sign an occasional policy of insurance, during which periods he used an ice cap to relieve pain, and often cried and exhibited mental confusion.

In *Eisenhauer* the assured, although he went to his store several days each week for two or three hours, was unable to carry on any serious discussion as to the conduct of the business and at no time was able to perform any work.

In *Kramer* the actions of the assured following his accident were sporadic and not continuous. His physician testified that claimant was totally disabled. Conflicting medical testimony justified the submission of the case to the jury.

*Cantor* likewise involved desultory and occasional activities on the part of the assured.

The rules in this type of case are stated in *Moskowitz v. Prudential Insurance Company of America,* 154 Pa. Superior Ct. 362, 365, 35 A. 2d 567, 569 (1944), supra. The burden of proof is on the claimant to show " 'inability to perform any of the duties of any occupation which the insured might be ordinarily capable of performing.' . . . Inability to perform the manual labor incident to the insured's own business does not establish total disability, if he can, notwithstanding his injury, manage and operate the business :".

We conclude that appellee is capable of continuing the operation of her business and therefore did not meet her burden of proof.

Judgment reversed and entered for appellant.