Cobosco, Appellant, *v.* Life Assurance Company of Pennsylvania.

Argued April 23, 1965. Before BELL, C. J., MUS-MANNO, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Albert N. Danoff,* with him *Winkler, Danoff, Lubin and Toole,* for appellant.

*T. F. Gill,* with him *David J. Dean, Morris J. Dean,* and *Dean and Dean,* for appellee.

OPINION BY MR. JUSTICE COHEN, September 29, 1965:

This is an appeal from the judgment of the Superior Court, which reversed a judgment upon a jury verdict for plaintiff, insured, and entered judgment n.o.v. for defendant, insurance company. We granted allocatur for the sole purpose of determining whether or not the Superior Court correctly decided that the

insurance company was entitled to judgment n.o.v. on the ground that the evidence was insufficient to show that Mrs. Cobosco was "totally disabled," within the meaning of the insurance contract and the pertinent case law, for the period of March 1, 1962, to May 17, 1963. Without comment, we affirm the Superior Court's decision on the other questions which were raised before it.[1]

It is clear that in deciding upon the propriety of a judgment n.o.v. the evidence must be reviewed in the light most favorable to the verdict winner, Mrs. Cobosco, and all conflicts therein must be resolved in her favor and she must be given the benefit of every reasonable inference therefrom. *Greco v. 7-Up Bottling Company of Pittsburgh,* 401 Pa. 434, 165 A. 2d 5 (1960); *Brandon v. Peoples Natural Gas Company,* 417 Pa. 128, 207 A. 2d 843 (1965). If, from the evidence so reviewed, a reasonable jury might conclude that Mrs. Cobosco was "totally disabled" for the period in question, then she is entitled to the judgment entered for her in the trial court.

---

[1] The insurance company did not raise any question in the Superior Court or in this Court regarding the sufficiency of the evidence with respect to the contract clauses making "total loss of time" and "regular and personal attendance by a licensed physician" a prerequisite to obtaining total disability benefits. Therefore, we need not consider the meaning of and evidence respecting these clauses. Moreover, such authority as we have found indicates that clauses requiring "total loss of time" or the like are not to be literally construed. See *Pacific Mut. Life Ins. Co. v. Riffel,* 202 Ark. 94, 149 S.W. 2d 57 (1941); *Pacific Mutual Life Insurance Company v. Branham,* 34 Ind. App. 243, 70 N.E. 174 (1904); *Anair v. Mutual Life Insurance Company of New York,* 114 Vt. 217, 42 A. 2d 423 (1945); Annotation, 31 A.L.R. 2d 1222. Non literal construction would be consistent with the law of Pennsylvania, as developed in the text, regarding other kinds of "total disability" contract clauses. Further, the evidence was sufficient to support the conclusion that the requirement of a regularly attending physician had been met.

It is undisputed that on October 29, 1960, Mrs. Cobosco fractured her right femur, necessitating hospitalization, an open reduction of the fracture, and the insertion of a Smith-Peterson nail. On December 24, 1960, she again fractured her right femur, necessitating hospitalization and another open reduction, and the placing of a metal plate on her right femur. In October, 1961, she twisted the same leg.

It is also undisputed that from 1951, until her injury on October 29, 1960, Mrs. Cobosco's sole occupation was operating, almost entirely by herself, a 25 x 100 foot hardware store owned by her. Before then, she operated the store together with her husband. As the Superior Court stated, "The only other specialized training that Mrs. Cobosco has ever had was as an elementary school teacher; but since she taught school for only four years about twenty-eight years ago and has neither a college degree nor a teaching certificate, she is not now qualified in that field." *Cobosco v. Life Assurance Company of Pennsylvania,* 204 Pa. Superior Ct. 119, 126, 203 A. 2d 353 (1964).

It is further undisputed that the duties required in the operation of the hardware store are attending hardware shows, purchasing stocks, soliciting orders, making deliveries, maintaining the appearance of the store, stocking the shelves, arranging displays, and waiting on customers. These duties necessitated both mental and physical efforts, the latter including the driving of a car, going up and down a ladder, and the handling of items varying in weight from light to very heavy. Up to her injury on October 29, 1960, Mrs. Cobosco performed these duties almost entirely by herself, eight to ten hours a day, six days a week. The only assistance she had was from her son who made occasional deliveries and someone who handled the heavier items.

It is undisputed, also, that, as a result of her injuries, Mrs. Cobosco suffers a permanent shortening of

her right extremity and a permanent "foot drop," preventing upward rotation of her right foot beyond a ninety degree angle. Also, the jury could have reasonably found from the evidence that, for the period in question, Mrs. Cobosco could not drive a car, could not walk without a cane, could not climb steps, could not stand on her feet for long periods of time, and could not perform any strenuous physical work. The jury could have reasonably found further that, for the period in question, Mrs. Cobosco could attend to the duties of the store to the following extent only: she could come to the store on three days of the week, on each of these days she could remain there for one to three periods lasting from twenty minutes to one hour, during which time she could do light selling, dictate policy, and supervise others. Also, it is undisputed that most of what Mrs. Cobosco formerly did by herself is now done by others, her mother, sister, and son, particularly her son.

The pertinent clause of the insurance contract provides: "[T]he term 'total disability' as herein defined, shall, when used in this policy contract, be construed as and be co-extensive with the terms totally disabled, disabled and disability, and shall mean such inability of the Insured to perform duties of any gainful occupation for which he may be reasonably fitted by reason of training, experience and accomplishment."

This provision necessitates two main inquiries. First, what kind of occupations must be considered in deciding whether the insured was "totally disabled" within the period in question? Second, what degree of inability to perform these occupations must insured show before she can be considered "totally disabled" for the period in question?

Regarding the first inquiry, in her application Mrs. Cobosco stated her occupation as a "hardware merchant." However, under her policy, she would not

necessarily be entitled to "total disability" benefits merely because she was "totally disabled" as a "hardware merchant."[2] Her policy requires her to be "totally disabled" with respect to "any gainful occupation for which [she] may be reasonably fitted by reason of training, experience and accomplishment." The wording of this clause reflects, to some extent, the rule that clauses in total disability insurance policies, which relate to the occupation to be considered in determining whether the insured is entitled to benefits, will not be literally construed or applied when, to do so, would make recovery of benefits unreasonably impossible in all or practically all cases. For example, in *Cooper v. Metropolitan Life Insurance Company*, 317 Pa. 405, 177 Atl. 43 (1935), a clause which required total disability to engage " ' in any and every occupation of employment for wage or profit' " was construed to mean "any occupation which the insured might be ordinarily capable of performing." We said: "While the words of the policy must receive reasonable construction and, literally interpreted, the words total disability to engage 'in any and every occupation of employment for wage or profit' would require that an insured be a helpless invalid before he would be entitled to benefits under the policy, this cannot be what the parties intended. It is rare that any man is incapacitated from doing some work; many a blind man weaves baskets; a man with both legs and one arm off can sit in a doorway and sell lead pencils . . . but it cannot well be argued that either is not totally disabled." Id., p. 408.

---

[2] Of course, an insured and insurer *might* contract, if they so desire, to insure against "total disability" to engage in a particular occupation only and, therefore, benefits might be recoverable regardless of the insured's ability to perform other occupations. See *Todd v. Occidental Life Insurance Company of California*, 208 Or. 634, 303 P. 2d 492 (1956) ; *Warren v. Commercial Travelers Mut. Acc. Ass'n of America*, 107 N.Y.S. 2d 325 (1951).

Similarly, it has been rightly held that "an insurance company cannot conjure up some imaginary occupation for its insured and defend upon the phantasy of its own creation. . . ." *Moskowitz v. Prudential Insurance Company of America,* 154 Pa. Superior Ct. 362, 365, 35 A. 2d 567 (1944).

It is clear that, in order to recover, Mrs. Cobosco had to show total disability only with respect to her occupation as a "hardware merchant." This follows, not from the fact that she so stated her occupation in her insurance application, or that the parties intended to insure her in that occupation regardless of her ability to perform other occupations, but from a consideration of the evidence set forth above in light of the relevant contract clause and pertinent case law. Moreover, if the evidence reasonably supports the conclusion that Mrs. Cobosco is totally disabled from being a hardware merchant in connection with a store owned by her, then it also reasonably supports the conclusion that she is totally disabled from performing such occupation in connection with a hardware store owned by someone else.

Thus, we turn to the second inquiry, which, in light of the foregoing, may be phrased: What degree of inability to operate her hardware store must Mrs. Cobosco show in order to be considered "totally disabled"? The contract itself provides that "total disability" means "inability of the insured to perform duties," of the occupation under consideration, *i.e.,* the operation of the hardware store. We have consistently refused to attribute an unreasonable intent to the parties by construing such clauses to mean that an insured could not recover "total disability" benefits if he were able to participate in the occupation under consideration only in the slightest degree, regardless of its insignificance in relation to the occupation as a whole. Accordingly, irrespective of the literal meaning of such

clauses, an insured is not "barred from recovery because he may be able to perform a few trivial and desultory acts or light work of a limited character and at irregular intervals. . . ." *Pearlman v. Metropolitan Life Insurance Company*, 336 Pa. 444, 448, 9 A. 2d 432 (1939) ; *Union Trust Company of Butler v. Guardian Life Insurance Company of America*, 176 Pa. Superior Ct. 424, 428, 107 A. 2d 584 (1954). On the other hand, it is also well established that the inability of the insured to personally do everything required in carrying on the occupation, or do all things he did before his disability, or do the things he did before in precisely the same manner does not ipso facto establish "total disability." *Moskowitz v. Prudential Insurance Company of America*, supra; *Catalano v. Prudential Insurance Company of America*, 150 Pa. Superior Ct. 331, 28 A. 2d 349 (1942) ; *Butler v. Metropolitan Life Insurance Company*, 122 Pa. Superior Ct. 159, 186 Atl. 395 (1936). Similarly, the inability of the insured to perform any or most of the physical labor required by an occupation which necessitates such efforts, among others, does not, ipso facto, establish "total disability." Id. And the inability of the insured to work in as continuous a manner as a fully able person does not, ipso facto, establish "total disability." *Cobb v. Mutual Life Insurance Company of New York*, 151 Pa. Superior Ct. 654, 30 A. 2d 611 (1943).

In our opinion, where, as here, the question of "total disability" must be decided in the context of the ability of the insured to perform the acts or duties necessary to the operation of a business owned by him, the cases hold that the insured must prove that the personal efforts that he himself is capable of making in the operation of the business are insubstantial and unimportant, by reason of their low quality or quantity, in relation to the character and amount of work required to carry on the business. *Moskowitz v. Pruden-*

*tial Insurance Company,* supra; *Cobb v. Mutual Life Insurance Company of New York,* supra; *Feigenbaum v. Prudential Insurance Company of America,* 144 Pa. Superior Ct. 412, 19 A. 2d 542 (1941); *Eisenhauer v. New York Life Insurance Company,* 125 Pa. Superior Ct. 403, 189 Atl. 561 (1937); *Butler v. Metropolitan Life Insurance Company,* supra.[3]

In determining the substantiality and importance of the insured's contribution to his own business, the fact that the insured might not be able, because of his disability, to obtain employment in a similar business owned by someone else may be relevant, but it does not conclusively prove total disability. Cf. *Boughton v. Mutual Life Ins. Co. of New York,* 183 La. 908, 165 So. 140 (1936); *Lorentz v. Aetna Life Ins. Co. of Hartford, Conn.,* 197 Minn. 205, 266 N.W. 699 (1936).[4] On the other hand, the fact that the business may be carried on by others, and that no one can prohibit the owner or proprietor from participating to whatever degree he is able and desires, does not bar the insured from recovering when, in fact, his participation is insubstantial and unimportant. *Mutual Life Ins. Co. of New York v. Binion,* 72 Ga. App. 173, 33 S.E. 2d 448 (1945); *Lorentz v. Aetna Life Ins. Co. of Hartford, Conn.,* supra; *Manzi v. Provident Mutual Life Insurance Co.,* 335 Mass. 71, 138 N.E. 2d 581 (1956). These considerations are well stated in the minority opinion in *Cobb v. Mutual Life Insurance Company of New York,* supra. (The minority dissented from the majority's view of the evidence not its view of the law.)

". . . [T]he jury could have found from the evidence that whereas plaintiff was formerly in good health and

---

[3] *Cantor v. Metropolitan Life Ins. Co.,* 108 Pa. Superior Ct. 1, 164 Atl. 145 (1933), stated another test of total disability which is substantially the same as the one approved herein.

[4] *Dittmar v. Continental Casualty Company,* 29 N.J. 532, 150 A. 2d 666 (1959), seems to hold the contrary.

actively engaged in the management of a farm and racing stable he is now, and has been during the period involved in this suit, an invalid who is compelled to delegate to others all the activities of his occupation except such of them as do not . . . defeat his right to recover; that he is transformed, by his disabilities, from active manager to a mere owner of two going concerns. . . .

. . .

". . . [T]he decision of the majority makes it virtually impossible for the proprietor of an enterprise, as distinguished from an employee, to get total disability benefits under policies of the kind here involved without selling or giving away or losing to the creditors the enterprise. That this plaintiff could not follow any gainful occupation if he were compelled to work for someone else seems apparent, yet, I concede, that is not a conclusive test. But the policies are intended to furnish security against loss of earning power, not income. . . . [T]oo much emphasis has been placed on the fact that the farm and racing stable continued, after plaintiff's disability, to operate on about the same scale as before. The question is not whether they operated but whether plaintiff has been and is able to make any useful contribution to their operation. . . . The jury apparently believed the complete operation had been, since plaintiff's disability, transferred to others and that his desultory activities were inconsequential. . . ."

In light of the principles stated above, it is clear that Mrs. Cobosco was not totally disabled for the period in question merely because she could not work as she did before or merely because a large part of the work must be done by others. Also, considering the total operation of the store it is clear that mental efforts, especially the exercise of "hardware business" judgment constitute an important part of the opera-

tion and, therefore, Mrs. Cobosco is not totally disabled merely because she cannot perform any or most of the physical work required. However, the jury might reasonably have found that in order to usefully contribute her mental efforts Mrs. Cobosco had to be present in the store so that she could directly supervise and dictate policy to others, and that the amount of time Mrs. Cobosco was able to be present in the store during the period in question was not great enough to make her contribution substantial and important in relation to the total amount and character of the work required to carry on the business. Thus, although they might reasonably have concluded otherwise, the jury's conclusion that Mrs. Cobosco was totally disabled for the period in question cannot be considered unreasonable as a matter of law. Accordingly, the insurance company was not entitled to a judgment n.o.v. Cf. *Manzi v. Provident Mutual Life Ins. Co.,* supra.

The insurance company has argued that we should consider the substantiality and importance of Mrs. Cobosco's efforts only in relation to the duties of supervising and managing the store rather than in relation to all the duties involved in the operation of the store. The argument is based upon the fact that, in her insurance application, Mrs. Cobosco noted her "duties" as "manager supervisory". Even if we were to accept the insurance company's argument, the jury might have reasonably concluded that the limited amount of time that she was able to spend in the store prevented Mrs. Cobosco from making a substantial and important contribution to the fulfillment of the duties of a manager and supervisor. Moreover, we do not agree with the insurance company's argument. Mrs. Cobosco was insured against her inability to "perform duties of any gainful occupation for which [she] may be reasonably fitted by reason of training, experience and accomplishment," which, under the facts of this case, means in-

ability to perform duties of operating her hardware store. The occupation which Mrs. Cobosco noted in her insurance application was that of a "hardware merchant". This occupation reasonably implies the whole range of duties included in the operation of the hardware store and not just "manager supervisory" duties. Cf. *Equitable Life Assur. Soc. of United States v. Bomar*, 106 F. 2d 640 (6th Cir. 1939). Thus, both her occupation, in fact, and that stated in her policy includes more than manager supervisory duties. There was no allegation or proof that Mrs. Cobosco's description of her duties was in any way "false and fraudulent" and, therefore, *Indovina v. Metropolitan Life Insurance Co.*, 334 Pa. 167, 5 A. 2d 556 (1939), cited by the insurance company, is inapposite. See also *Evans v. Penn Mutual Life Insurance Company*, 322 Pa. 547, 186 Atl. 133 (1936). Under such circumstances we see no reason why Mrs. Cobosco's disability should be determined in relation solely to the duties stated on her application rather than all the duties which were actually involved in her occupation.

Judgment of the Superior Court reversed and the judgment of the Court of Common Pleas of Luzerne County reinstated.

Mr. Chief Justice BELL dissents.