Slobodzian *v.* Beighley, Appellant.

Argued September 28, 1960. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Harry A. Heilman, Jr.,* with him *Blair F. Green,* for appellant.

*James G. Callas,* with him *John C. Millard,* for appellee.

OPINION BY MR. JUSTICE BOK, November 15, 1960:

The minor plaintiff fell into an open cellarway behind a store and, with her mother as guardian, sued the owner. Defendant appealed when, following a jury's verdict for the plaintiffs, his motions for a new trial and for judgment n.o.v. were overruled.

Three questions are presented: the defendant's negligence, the minor's contributory negligence, and her status as trespasser or gratuitous licensee. No trial errors are alleged.

The mise-en-scène is an open area or parking lot behind defendant's supermarket at Main, Bridge, and Diamond Streets in Leechburg, Armstrong County, at ten o'clock on a November night. Main Street, running east and west, bounds the property's 119 feet of frontage on the north, but the building occupies only 96½ feet of this length; at the eastern side of the building there is a 3-foot sidewalk and beyond it an 18-foot parking lot on defendant's property and bordering on Bridge Street, which forms the eastern boundary of the property. The western boundary consists of other buildings. The southern boundary is Diamond Street, which parallels Main. The market building does not run the full length of the lot, which is 120 feet, from Main to Diamond, but occupies only 99½ feet. This leaves an open L-shaped area, all of it on the defendant's property, the southern arm 20 feet wide and the eastern 18 feet, and this is used for parking by the patrons of the market; the sidewalk allows them to pass from the front entrance on Main to the side and rear, in order to reach their cars, and it extends no

farther south than the southern wall of the building. Nothing but a white line separates the parking area from Bridge and Diamond Streets; it is blacktopped and flush with them.

The cellarway into which the minor plaintiff fell is roughly in the center of the rear of the market building; it is 16 feet long, 3½ feet wide, and has nine steps leading to its bottom depth of 7 feet 1 inch. Its long northern side is the southern wall of the building, and it is used as a fire exit. There was no railing around it except a curbing 10 inches wide and 5 inches higher than the surrounding surface of the parking lot. The southern edge of the cellarway is 18 feet from Diamond Street, and its eastern side about 60 feet from Bridge Street. An outside chimney extending 18 inches into the parking area forms part of its eastern wall.

There is a street light at the corner of Bridge and Diamond, and a system of private lights on the southern wall of the market, but the latter were turned out after closing the market; they were not lighted at the time of the accident, but there is evidence that the street light was then on.

The plaintiff, whose name is Marjorie, was on the street with three other girls, at one point intending to go to a dance. The town had a curfew and the girls had been warned by a policeman not to loiter. Going east on Main they met some boys they knew and stopped to talk with them in front of defendant's market. When someone shouted that cops were coming, Marjorie and two of the other girls began to run east on Main, then south on the sidewalk alongside the market, and at some sort of angle across the rear parking area on or towards Diamond Street. Marjorie said that it was dark and that suddenly she tripped and fell into what turned out to be the cellarway, breaking her leg.

Defendant's first point is that Marjorie was a trespasser and was owed no duty beyond refraining from wanton conduct, or at least that if she was a gratuitous licensee in cutting short across the parking area from Bridge to Diamond she went beyond the area of her license by deviating too far towards the cellarway and hence became a trespasser. It is hard to separate this question from those of negligence, original and contributory, since all of them depend on what Marjorie was doing and why she was where she was, and hence we will discuss the case as a whole.

There is evidence from a man who worked as police officer and photographer that the public used the sidewalk along the eastern wall of defendant's market to go south and then out southwestwardly across the rear parking lot to Diamond Street. This would take them on the hypotenuse of a triangle along whose leg to their right was the cellarway. People so cutting the corner would pass near but not close to the hole, depending on how sharply they were cutting the corner. In order to make his property inviting, defendant had eliminated any difference in height between his parking area and the two public streets that bounded it, and had provided a sidewalk on his own land as well. If the public used this unified system of public street and private way and parking area, defendant must be held to know what risks existed for the public to run and be held also to the duty to warn or safeguard against them.

The Restatement of the Law of Torts, says, at §342: "A possessor of land is subject to liability for bodily harm caused to gratuitous licensees by a natural or artificial condition thereon, if, but only if, he (a) knows of the condition and realizes that it involves an unreasonable risk to them and has reason to believe that they will not discover the condition or realize the risk

and (b) invites or permits them to enter or remain upon the land, without exercising reasonable care (i) to make the condition reasonably safe, or (ii) to warn them of the condition and the risk involved therein."

And in comment d under this section it is said that: "The liability of a possessor of land who invites or permits gratuitous licensees to enter his land, is not based upon a duty to maintain it in safe condition. It is based upon his duty to disclose to them the risk which they will encounter if they accept his invitation or permission. He is required to exercise reasonable care either to make the land as safe as it appears or to disclose the fact that it is as dangerous as he knows it to be."

This doctrine is related to our case law by *Matthews v. Spiegel,* 385 Pa. 203 (1956), 122 A. 2d 696, where we said: "It is also true that, whereas the duty of a lessor to an invitee or business visitor is to exercise reasonable care to maintain the premises in safe condition, his only duty to a licensee is to refrain from wilfully or wantonly injuring him; he is under no liability to keep the premises in repair for the benefit of such licensee: Parsons v. Drake, 347 Pa. 247, 249, 250, 32 A. 2d 27, 29. But there are two qualifications of this general rule of law, one,—which does not apply to this case—that the lessor is liable for injury occasioned by any affirmative or active negligence on his part in connection with activities conducted on the premises: Potter Title and Trust Company v. Young, 367 Pa. 239, 244, 80 A. 2d 76, 79; the other, which does apply, that he is likewise liable for injury arising from a latent defect in the premises of which he has knowledge and of which he fails to inform the licensee: Rushton v. Winters, 331 Pa. 78, 80, 200 A. 60, 61; Bowser v. Artman, 363 Pa. 388, 391, 69 A. 2d 836, 837."

It seems to us obvious that an unguarded open hole with a raised curb around it is such latent defect that a failure to light it or safeguard it would be an active failure to warn and inform.

We also consider it obvious that it was for the jury to say what Marjorie was doing so near the cellarway. She was just under sixteen and she was fleeing from imaginary ills. There is no evidence that she had done anything wrong or that the police were in fact pursuing her. She and her friends had been warned not to loiter and when someone said that the police were baying down their trial she felt that discretion lay in mobility. Whether the rapid decisions of flight were reasonable or not was for the jury and is not for us. Was she trying to hide? Was she merely taking temporary refuge behind the truck parked near the hole in order to wait and see if the police were really after her? Did she think there might be another way out of the area and was she looking for it? Was she, a sixteen-year-old colt, just galloping about? None of these alternatives seem rendered brittle as a matter of law.

Defendant cites *Barth v. Klinck,* 360 Pa. 616 (1949), 62 A. 2d 841, and *Carns v. Noel,* 364 Pa. 77 (1950), 70 A. 2d 619, to support his argument that Marjorie must show compelling necessity for being where she was. Neither case melds. *Barth* involved a lady who tested an obvious danger by stepping over a barricade and fell into a hole within the fortifications. *Carns* was a customer who wandered into the rear of a garage and fell into an open pit. The exact solvent is not the precise degree of light or darkness, nor is it the presence of the plaintiff on public or private land, indoors or out. It is rather whether under all of the existing conditions, there existed an effective trap to catch the reasonably wary, and *Dively v. Penn-*

*Pittsburgh Corp.,* 332 Pa. 65 (1938), 2 A. 2d 831, is an example. It involved, indoors, a trap door, a screen, and a subdued light.

The closest case to that at bar is *John v. Reick-McJunkin Dairy Co.,* 281 Pa. 543 (1924), 127 A. 143, in which we said: "Where one permits others to travel over his property on an established path, or roadway with full knowledge of such use and without objection, in doing so he is bound to see that no dangerous pitfalls are created; if he fails in this respect, the duty is placed upon him to give reasonable notice or warning to avoid injuring those in the habit of using the way. Under such circumstances a higher duty is imposed on him than on an owner toward those who are merely trespassers on his property. . . ."

While the cellarway was not on any path, its proximity under all of the circumstances removes the case from our province and annexes it to the jury's.

On the question of light, there is a clear-cut issue of fact.

Defendant was his only witness. He testified that the street light at the corner of Bridge and Diamond Streets threw illumination in the direction of the cellarway and made "plenty of light to see to walk by." He never had to use a flashlight to get around and believed that even with a truck parked between the light and the cellarway there would be enough light to get along by.

To the contrary, plaintiff and her witnesses testified that it was "normally dark" at the cellarway; that if no cars were parked there the area would be lighted "to some extent" and not be in total darkness, but that if cars were parked it "might be dark"; that there was one truck parked to the right of the cellarway at the time of the accident; that one witness, hearing Marjorie scream, went on all fours to avoid falling in her-

self; that Marjorie wasn't visible until someone shined a flashlight into the hole; that there was no light there and it was "very dark".

In *Dively v. Penn-Pittsburgh Corp.*, supra (332 Pa. 65) we said: "The question of plaintiff's contributory negligence was undoubtedly for the jury. There is a multitude of cases of this type to be found in the reports, but they necessarily depend largely upon their individual facts. However, analysis would seem to justify their classification into two groups. There are those in which a person wanders around in a place absolutely dark and where, though not a trespasser, there is no reasonable necessity for his presence. In such cases recovery is denied: Davis v. Edmondson, 261 Pa. 199; Hoffner v. Bergdoll, 309 Pa. 558; Modony v. Megdal, 318 Pa. 273; McVeagh v. Bass, 110 Pa. Superior Ct. 379; Hardman v. Stanley Co. of America, 125 Pa. Superior Ct. 41. There are other cases where there is some fairly compelling reason for walking in a place which, though dark, is not utterly devoid of light. Under such circumstances, contributory negligence will not be declared as a matter of law: Reid v. Linck, 206 Pa. 109; Haugh v. Harris Brothers Amusement Co., 315 Pa. 90; Murphy v. Bernheim & Sons, Ltd., 327 Pa. 285; Leckstein v. Morris, 80 Pa. Superior Ct. 352; Rutherford v. Academy of Music, 87 Pa. Superior Ct. 355; James v. Smith, 93 Pa. Superior Ct. 485; Cathcart v. Sears, Roebuck & Co., 120 Pa. Superior Ct. 531. It may be stated, therefore, that the controlling factors in determining the question of contributory negligence in accident cases of this nature are the degree of darkness and the justification for the injured person's presence in the place of danger."

With these various elements uncertain and for the jury to pass upon, we regard the case as falling within the rule of *Straight v. Goodrich Co.*, 354 Pa. 391

(1946), 47 A. 2d 605, that: "the law imposed upon the defendant the duty either to exercise reasonable care to disclose to deceased dangerous conditions known to it and not likely to be discovered by him or to make such conditions reasonably safe."

The judgment is affirmed.

Mr. Justice BELL and Mr. Justice BENJAMIN R. JONES would enter judgment for the defendant n.o.v.