372 A.2d 864

**Michael Patrick McINTYRE, a minor, by John W. McIntyre, his parent and natural guardian, and John W. McIntyre and Vera McIntyre, in their own right, Appellants,**

**v.**

**Matthew CUSICK, a minor, by his parent and natural guardian, Albert Cusick, Appellee.**

Superior Court of Pennsylvania.

Argued April 19, 1976.

Decided April 19, 1977.

357

Robert S. Grigsby, Pittsburgh, with him Janet N. Valentine, Pittsburgh, for appellants.

Jan C. Swensen, Pittsburgh, with him Scott, Swensen & Scott, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE and VAN der VOORT, JJ.

WATKINS, President Judge:

This is an appeal from a judgment entered on a verdict in favor of the defendant-appellant, Matthew Cusick, a minor; and from the denial of post-trial motions.

The action in trespass arose out of an incident which occurred on November 2, 1970 involving two minor boys who are cousins. The minor plaintiff and the minor defendant at that time were both eleven years of age. On the day in question these two boys and two others had been playing football at the minor plaintiff's house. When the defendant decided to go home, the other three agreed to walk him part of the way to his home. On the way home the boys took a tour down an alley which runs parallel to a football field located on one side of that alley. Opposite the football field on the other side of the alley there was a six-car garage. While going down the alley the boys, continuing their athletic play, began throwing stones at a rain gutter attached to the garage about seven feet above ground. Those boys tall enough began "dunking" the stones in the gutter in a manner imitating the basketball shot of the same name. Eventually the boys switched their stone throwing attention away from the pretended basket and directed it toward a light standard which supported lights to illuminate the football field. The boys began throwing stones at the standard and at a building beyond the standard situated between it and the football field. At this time the record indicates that all four of the boys were on the same side of the alley, i. e., the garage side, and were throwing stones at the light standard area. The record reveals no specific organization to the boys' activities although it is clear that they were loosely in a row throwing stones. There appears to have been no specific target and the stones that were thrown sailed in random directions and did not consistently strike the light standard or any other discernable target.

The exact detail of what happened next is not clear from the record and was apparently not particularly clear in either of the minor parties' recollection. At one point the record indicates that the minor plaintiff walked alone across the street and the boys quit throwing stones. In yet another it seems as though the boys quit throwing stones, *then* the minor plaintiff walked across the street and the other two boys followed. Although there is this conflict, it is undisput-

ed that at the time of the injury to the minor plaintiff's eye, he was across the alley from the minor defendant. Also, it appears that at this time the defendant called out to the other boys generally and said something to the effect, "Look at my Dave Guisti windup." The plaintiff turned around and saw the defendant's arm extended and almost simultaneously he was struck in the eye with a stone. There is no conflict as to who threw the stone; that the stone thrown by the minor defendant struck the plaintiff; and as to the damages, as the minor plaintiff has been legally blind in the stricken eye since shortly after the incident.

The appellant, in his appeal from a judgment entered for the appellee in the court below and the refusal to order a new trial, has averred several errors for our consideration. The first two relating to the court's instruction on contributory negligence and assumption of risk are related although obviously distinct in their application and effect as defenses. See, *Joyce v. Quinn,* 204 Pa.Super. 580, 205 A.2d 611 (1964). It is the contention of the appellants that the court erred in instructing the jury that the minor plaintiff's contributory negligence and assumption of risk would bar recovery insofar as there was no evidence on the record to support such a finding. An examination of the record as to both contentions finds them to be without merit.

The record is at best conflicting and unclear as to the relative position of the four boys to each other at the time of the unfortunate incident as well as to whether or not the minor plaintiff walked across the street before or after the break in the stone throwing. Moreover, there is the difficulty in inferentially determining the purpose and duration of the "lull" in the stone throwing. And finally, there is conflicting testimony as to the position of the minor plaintiff vis-à-vis the generally defined target area. In a case when there is any question as to whether the injured person's position was dangerous, showed lack of the exercise of due care under the circumstances, and contributed to the injury, the issue of contributory negligence is for the jury. *Prince v. McNeal,* 421 Pa. 126, 218 A.2d 775 (1966). Similar-

ly the unexplained lull in stone tossing and the relative position of the participants lend themselves to various alternatives and inferences therefrom all of which bear upon the reasonableness of the plaintiff's position and actions under the circumstances. None of the alternatives available to the jury under the force of the record and the instructions of the court appears speculative; neither do these alternatives seem rendered brittle as a matter of law. *Slobodzian v. Beighley,* 401 Pa. 520, 164 A.2d 923 (1960).

■ The issue of assumption of risk by the plaintiff involves questions related to the above but with different application. A plaintiff is barred from recovering under a theory of negligence if it is proven that he, with appreciation and knowledge of an obvious danger, purposely elects to abandon a position of relative safety and chooses to reposition himself in the place of obvious danger and by reason of that repositioning is injured. *Hall v. Ziegler,* 361 Pa. 228, 64 A.2d 767 (1949); see also *Cummings v. Borough of Nazareth,* 427 Pa. 14, 233 A.2d 874 (1967).

■ It is patently clear that the minor plaintiff moved into a position of danger to him. The question then becomes whether there was sufficient evidence, directly or inferentially, to allow the issue to go to the jury. We must agree with the appellant that the standard applied to assumption of risk is essentially subjective. The evidence must show that at the time in question the injured plaintiff knew and understood the danger and with knowledge willingly accepted that risk. *Restatement of Torts* 2d, § 496C, and comments thereto.

■■ In the instant case the record discloses that the injured plaintiff knew that the defendant's throwing aim was as erratic as an average eleven-year-old boy. When asked why he walked across the street the plaintiff could not recall although he did recall positioning himself in the firing line between the three other boys and the general target

area. As pointed out before, there is conflicting evidence as to whether the nebulous lull occurred prior to or after the plaintiff repositioned himself across the street. Conflicting testimony is no reason to remove an issue from the jury's consideration; to the contrary it is their factual determination and the reasonable inferences therefrom which, under proper judicial instruction, resolves such conflicts. *McAuliffe v. Constantine,* 228 Pa.Super. 52, 323 A.2d 158 (1974); *Gordon v. Trovato,* 234 Pa.Super. 279, 338 A.2d 653 (1975).

Mr. Justice Musmanno in the case of *Collins v. Zediker,* 421 Pa. 52, 218 A.2d 776 (1966), accurately reflects the province of the jury in determining phenomena and situations which are matters of common knowledge. That case dealt with the reversible error of admitting expert testimony of the speed of a pedestrian. Obviously distinguishable issually, that case pointed out, however, that determination of the speed of a pedestrian walking eighteen feet was the jury's responsibility to determine. Similarly instantly, the throwing accuracy or lack thereof, the plaintiff's appreciation of that relative accuracy and the reason for his repositioning are matters for jury determination and the judge's instruction thereon accurately reflected the current Pennsylvania law on assumption of risk.

■ The next issue directed to this court asserts that the trial court erred in failing to grant plaintiffs' motion to withdraw a juror after an apparent reference in a hypothetical question to an alleged uncorrectible visual defect from which defendant's counsel was suffering. The record indicates that the witness to whom the question was directed was Dr. Norman Minde, a medical doctor from the Pittsburgh area, who had limited his practice to occupational medicine and rehabilitation. He was called upon to testify as to the decrease in earning capacity of an individual who had been rendered legally blind in one eye. It was the opinion of Dr. Minde that a person so affected would be 24% disabled from ...n earning capacity standpoint, and that

opinion was delivered in answer to several hypothetical questions.

On cross examination the expert witness admitted that he had never examined the minor plaintiff and that he was speaking strictly from a hypothetical position. Defense counsel next questioned:

"Q. Would you agree with me that Michael McIntyre, the individual that we're talking about with the eye impairment, could go on and have no impairment in his earning capacity whatsoever, isn't that possible? [After objections not here relevant the witness answered.]

A. It's probable or possible if he was in a job where he would not have to use his eyes for specific things that it would not affect his earning capacity.

Jobs, for instance like teaching or being a plumber or being a lawyer, something like that would not, the loss of an eye would not affect his earning capacity, would it?

A. No. Jobs which not (sic) have with it the intended possibility of injuring the good eye. A man like this would not be put into a laboring field or where he would do factory work where there would be a possibility of missiles being tossed about such as shavings or foilings because this would be dangerous since he only has the one eye. But something where he would not have any chance of having the other eye injured would, of course, limit things he would do. Perhaps have the earning capacity diminished.

Q. *If I told you I had an uncorrectible defect* . . ." [Emphasis supplied]

After the prompt and timely objection of plaintiffs' counsel and a sidebar motion to withdraw a juror the court called a brief recess and retired to chambers with counsel. After the recess of some twelve minutes the court reconvened and stated:

"THE COURT: Thank you, ladies and gentlemen. The previous question will be stricken. You'll disregard that question, ladies and gentlemen."

The controlling case according to appellants is *Todd v. Lit Brothers*, 381 Pa. 109, 112 A.2d 810 (1955). That case involved an action in trespass for injuries to a minor plaintiff suffered when he was a business invitee on defendant's premises. The plaintiff, then two and one-half years old, was pushed by other customers so that he tripped on an escalator and his finger was caught in the mechanism. Although his finger could have been saved if the mechanism was stopped, none of defendant's employees answered the repeated cries for help and it was stopped after two or three minutes when the finger was severed. In questioning one of defendant's employees, plaintiff's council asked, "There have been other accidents there?" The trial court sustained defendant's objection but refused his motion for withdrawal of a juror. In reversing and ordering a new trial the Supreme Court made several observations. First, prior to the questioning the trial judge had advised at sidebar that inquiry into prior accidents was impermissible. Secondly, as a result of the sidebar discussion the intention of counsel in asking it could not be doubted. Third, the prejudicial effect was obvious especially in the case of very close questions of negligence and injuries. In the instant case the question complained of was directed to a witness for the plaintiff testifying as to diminished earning capacity and not to the admittedly close question of liability. The witness had been cross-examined as to exceptions to his stated opinion, hypothetically referring to various professions and occupations without focusing on any one. There is no indication that defense counsel intentionally alluded improperly to a visual defect, or that he in fact suffered from one. And finally, the court here instructed the jury to disregard the remarks and question of counsel, although perhaps not as emphatically as he may have done so. Consequently we conclude that the uncompleted hypothetical question was not so serious as appellant urges and did not inflame or sway the passions of the jurors. Further, we find no abuse of discretion of the

trial court in refusing to withdraw a juror. *Frontage, Inc. v. County of Allegheny,* 413 Pa. 31, 195 A.2d 515 (1963).

The next issues to which we address ourselves deals with the charge of the court to the jury. The appellant urges that the trial court erred in its instruction as to the burden required to make out contributory negligence and assumption of risk. Specifically the appellant complains that the duty of care required of minors was not adequately explained by the court, although he admits that the words used by the court in its instructions were substantially those used in *Kuhns v. Brugger,* 390 Pa. 331, 135 A.2d 395, 401–402 (1957). Furthermore in his next and related issue appellant urges that the court failed to charge adequately as to the presumption of a minor defendant being incapable of contributory negligence.

As in all cases involving objections to jury instructions, we must re-insert the allegedly offensive language into the whole charge in light of the record. *Delp v. Heath,* 234 Pa.Super. 607, 340 A.2d 530 (1975). After adequately instructing the jury of the general law of negligence and ordinary care the court pointed out that the instant matter required additional consideration. The court stated:

"Now, ladies and gentlemen of the jury, we have here a case which causes us to detract somewhat from that definition I've given you, and it requires further introspection into the law because we have before us a minor, a person below the legal age of majority. So the law differs slightly, as I will explain it to you, in that regard.

"I could describe to you the law, but I was fortunate enough to have before me an opinion which was written by the Chief Justice of our Supreme Court, the Honorable Benjamin Jones, and I believe that my brother on the appellate court has well stated the law of our Commonwealth, and I will read it to you so pay very close attention."

At that point the court extensively and accurately quoted from *Kuhn v. Brugger,* supra, 390 Pa. at 339–342, 401–402, 135

A.2d 395. The trial court pointed out that the reasonable care required of a minor is measured by a different yardstick than that of an adult—it is that measure of care which other minors of like age, experience, capacity and development would ordinarily exercise under similar circumstances. *Ibid.* After repeating that, the court continued with the language of the Chief Justice. The trial court correctly categorized the presumptions arising from and by age and finally ended that segment of the charge by noting that the capacity to appreciate the danger involved is usually determined by the understanding expected from children of like age, intelligence and experience. *Ibid.* Thus we are forced to disagree with the appellant's conclusions that the charge was inadequate and incorrect as stated. Furthermore, we find no merit to his contention that the court's instruction as to the rebuttable presumption was unduly complex. To the contrary the language of Mr. Chief Justice Jones is particularly clear.

On the next page of the record the court instructed the jury as to contributory negligence, making specific reference to the immediately preceding charged section dealing with negligence on the part of a minor. We do not feel that this reference to the preceding instruction was prejudicial to the appellant since it was not significantly remote from it. As we pointed out above, it is an accurate statement of the applicable law.

The remaining contentions of the appellant are wholly without merit and were not properly preserved on appeal.

Judgment affirmed.

SPAETH, J., did not participate in the consideration or decision of this case.