City of Pittsburgh, Appellant *v.* Washallen Readie, Appellee.

Argued November 3, 1978, before Judges MENCER, DiSALLE and CRAIG, sitting as a panel of three.

*Joseph A. Fricker, Jr.,* Chief Trial Counsel, with him *Virginia I. Cook,* Assistant City Solicitor, and *Mead J. Mulvihill, Jr.,* City Solicitor, for City of Pittsburgh.

*C. William Berger,* with him *Berger, Kapetan & Malakoff,* for Readie.

OPINION BY JUDGE CRAIG, July 6, 1979:

The City of Pittsburgh (city) has appealed a decision of the Court of Common Pleas of Allegheny County, denying both its motions for judgment n.o.v. and for a new trial.

These proceedings originated when Washallen Readie (Readie), owner of property located at 1616-1618 Webster Street, Pittsburgh, Pennsylvania, instituted an action in trespass against the city to recover damages for the condemnation and wrongful demolition of that property. In post-trial motions from a $25,000 jury verdict in Readie's favor, the city claims: (1) that erroneous jury instructions and misleading statements by Readie's counsel in closing to the jury constitute grounds for a new trial, and (2) that, because the jury verdict was based on insufficient evidence and is against the law, the city has adequate grounds for a judgment n.o.v.

The city's motion for a new trial on the basis of erroneous and incomplete jury instructions is with-

out merit. Counsel for the city failed to except to the charge and did not request further or clarifying instructions at the close of the charge. Under such circumstances, the city cannot now assert inadequate, incomplete or erroneous charges as grounds for a new trial. *Pennsylvania Power & Light Co. v. Gilotti,* 39 Pa. Commonwealth Ct. 234, 395 A.2d 624 (1978); *Dilliplaine v. Lehigh Valley Trust Co.,* 457 Pa. 255, 322 A. 2d 114 (1974).

Further, the city's claim that opposing counsel's remark to the jury, that the city should be required to reinspect condemned premises after the 30-day appeal period has passed, was so prejudicial as to require the grant of a new trial, is without merit where the judge's charge to the jury was clear and correct.

Reviewing the facts which culminated in the demolition of the property, we note that the city's involvement with Readie's property began in September, 1965, when it issued a notice of dangerous conditions on the property, resulting from a fire in July, 1965.

Testimony in the record indicates that Readie began repairs almost immediately, including: removal of all the plaster from walls and ceilings and replacing it with plaster board; replacement of the roof including new joists, a project which took several years to complete; removal of all the glass from the windows; and removal of all the downspouts. After exhausting his funds, Readie sealed up the premises in December of 1970.

Then came a series of seal-up permits and revocations, a canceled Housing Court hearing in August, 1971, followed closely by another seal-up permit revocation, and finally the notice of condemnation, on August 31, 1971.

The notice of condemnation required that the premises be made safe and secure. Readie sealed up the back door, which had been pried open, believing that

to be the only act necessary to comply with the provisions of the notice.

The city demolished the premises sometime in September of 1972.[1]

The crux of the city's argument on appeal is that it was acting reasonably when it razed Readie's property and therefore, the jury's verdict, indicating a finding to the contrary, was against the clear weight of the evidence, entitling the city to a judgment n.o.v. or a new trial.

As this Court reiterated in *Bosniak v. Redevelopment Authority of Philadelphia*, 20 Pa. Commonwealth Ct. 291, 298, 341 A.2d 260, 263 (1975):

> A new trial should be awarded on the ground that the verdict is against the weight of the evidence only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.

*Burrell v. Philadelphia Electric Co.*, 438 Pa. 286, 289, 265 A.2d 516, 518 (1970).

The City of Pittsburgh draws its power to issue notices of demolition from the Act of May 13, 1915, P.L. 297, 53 P.S. §25081 et seq. Section 3 of the Act, 53 P.S. §25094, sets out the procedure for an appeal of an order of demolition, and provides the property owner an opportunity for a full judicial hearing.

---

[1] After the condemnation notice of late August, 1971, and after Readie sealed up the loose door on September 3, 1971, and until the week of July 4, 1972, Readie checked the property once or twice a month to determine that the building remained properly sealed. On April 12, 1972 the city awarded a contract for the demolition of the building. The parties agree that the demolition was completed on or before September 28, 1972. Readie paid the cost of demolition and interest sometime before October 28, 1972, when this action was commenced.

The notice of condemnation Readie received contained an enumeration of the specific conditions which led the city to condemn his premises for being "unsafe and dangerous."[2] The list was followed by the further notice that "unless within thirty days the said building . . . is made safe and secure or torn down and removed the City of Pittsburgh will remove the same. . . ." Finally the notice contained that portion of Section 3 of the Act, 53 P.S. §25094, which gives condemnee thirty days in which to appeal the condemnation to the court of common pleas.

There is no dispute that Readie did not exercise his right to appeal. As the judge correctly instructed the jury, the only issue remaining was:

Did Mr. Readie, after he received the notice, within thirty (30) days cause the property to be made safe and secure under the circumstances of the case? I charge you, as a matter of law that if he did, (the) City acted illegally; . . . . If Mr. Readie did not make it safe and secure, did not remedy and rectify the conditions complained of, and the basis for condemnation, then the City was justified and no damages would be allotted.

The substance of the evidence supporting the city's demolition order was from the visual observations made by the city building inspector. Readie's testimony consisted of a point-by-point denial of the dan-

---

[2] The following list of unsafe and dangerous conditions appeared on the Notice of Condemnation which Readie received: Mortar deteriorated in walls, brick loose. Brick loose in chimney. Window frames and sash rotted, glass broken out; doors broken. Holes in roof. Downspouts rusted. Floors and stairs worn, loose. Plaster loose, falling off. Porch rotted, sagging. Building open, vandalized; littered with debris; unfit and unsafe for occupancy, constituting a serious hazard in the immediate area and a danger to the general welfare of the public.

gerous conditions alleged by the city to have existed on his premises.

After careful review of the testimony, we find ample evidence on which the jury could have found that the propeerty was, at the time of the notice or thirty days thereafter, safe and secure, and therefore in compliance with one of the alternatives stated in the notice of condemnation.

Where there is substantial support in the evidence for the jury's verdict, it will be upheld. *Department of Transportation v. McGuire*, 41 Pa. Commonwealth Ct. 14, 19, 399 A.2d 134, 137 (1979). Therefore we cannot say that the lower court abused its discretion in denying the city's motions. *Pennsylvania Power and Light v. Gilotti, supra.*

We affirm the lower court's order denying city's motions for judgment n.o.v. and a new trial, and dismiss the city's appeal.

ORDER

AND Now, this 6th day of July, 1979, the order of the lower court, No. 2720 October Term, 1974, dated August 4, 1977, dismissing the City of Pittsburgh's motion for judgment n.o.v. and new trial, is affirmed.