Holland v. Rich

*Jon J. Auritt* and *Donald Applestein,* for plaintiffs.

*John J. McCreesh,* for defendants.

TOAL, *J.,* June 21, 1982—The facts of the unfortunate incident giving rise to this litigation can be summarized briefly. In the early evening hours of April 9, 1976, Gregory Holland, then age 16, was shooting pool in Walt's Cafe at 604-606 Morton Avenue, Chester, Pa. Walt's Cafe was owned and operated by Walter P. Kirkner, Inc., with Mr. and Mrs. Walter P. Kirkner as the officers and shareholders in the corporation. James Rich was the bartender employed by Walt's Cafe. On the evening of the incident, Holland, standing some three to five feet from Rich, suffered a gunshot wound to the abdomen when a pistol Rich was either "checking" or "playing around with" discharged. No evidence was presented at trial of any altercation between Holland and Rich prior to the shooting. Rich had previously shot himself accidentally on two separate occasions, and had threatened another individual with the weapon in the past. Testimony was offered that Walter Kirkner knew that Rich carried a pistol, had previously shot himself and had made threats with the weapon to another individual.

As a result of the abdominal gunshot wound, Holland was hospitalized on three separate occasions at Crozer-Chester Medical Center and Sacred Heart Hospital in Chester, and underwent surgical procedures during each hospitalization, primarily for bowel obstructions and adhesions, and other complications of the wound. As a result of the surgery, he exhibits a significant surgical scar extending from the lower chest to the navel.

After a non-jury trial, the court entered a verdict in favor of plaintiff Gregory Holland and against all

defendants, namely James Rich, Mr. and Mrs. Walter P. Kirkner and Walter P. Kirkner, Inc., in the amount of $23,000, and in favor of plaintiffs James Holland, Sr. and Dora Holland, against all defendants, in the amount of $14,195.80, representing medical expenses incurred by their son. It is to this verdict that exceptions were taken with argument before the court en banc.

## MOTION TO STRIKE EXCEPTIONS

Plaintiffs assert that Pennsylvania Rule of Civil Procedure 1038(d) requires, inter alia, that "each exception shall set forth a separate objection precisely and without discussion." The purpose is "to enable the court to rule upon them intelligently and the opponent to prepare himself adequately in advance of argument." (See Goodrich-Amram 2d, comments to Rule 1038-d: 1). However, the court must now weigh the language in this rule with the language of Pennsylvania Rule of Civil Procedure 126 which calls for a "liberal construction" of the rules "to secure the just, speedy and inexpensive determination of every action . . . the Court at every stage of any such action . . . may disregard any error or defect of procedure which does not affect the substantial rights of the parties."

Here, plaintiffs do not contend in their motion to strike that they were precluded from adequately preparing in advance of oral argument and, in fact, plaintiffs' "Memorandum in Opposition to Defendants' Exceptions to Decision" respond to all arguments raised by defendants in their brief. Accordingly, with prejudice neither being claimed nor shown, the court denies plaintiffs' motion to strike and moves to consider the merits of the exceptions raised by the defense.

## ASSUMPTION OF RISK

Defendants have raised as an affirmative defense in this action the assumpsion of risk by plaintiff, Gregory Holland. The doctrine of assumption of risk has recently come under serious question in Pennsylvania.[1] Nevertheless, this court has determined that plaintiff did not assume the risk under the previously established standards as set forth, inter alia, in Jones v. Three Rivers Management Corporation, 483 Pa. 75, 394 A. 2d 546 (1978) and McIntyre v. Cusick, 247 Pa. Superior Ct. 354, 372 A. 2d 864 (1977).

While it is undisputed that plaintiff Holland was aware that defendant Rich carried a gun in the bar, still Holland testified at trial that he had no argument with Rich in the minutes preceding the shooting, and there had been no verbal threats nor had any threatening movements been made by Holland toward Rich before the incident. Holland also testified, albeit contrary to the testimony of Rich, that he (Holland) was standing at the pool table preparing to take a pool shot at the time of the incident, and Holland further testified that he did not see Rich point the gun at him before the shot rang out. The credibility of the witness is inarguable for the finder of fact: Galizia v. McKim, 210 Pa. Superior Ct. 144, 232 A. 2d 213 (1967). Thus, the trial judge in this non-jury matter could properly

---

1. In an equally divided court with Chief Justice O'Brien concurring in the result, two justices joined Justice Flaherty in holding that, "except where specifically preserved by statute; or in cases of express assumption of risk, or cases brought under 402A, (a strict liability theory), the doctrine of assumption of risk is abolished." Rutter v. Northeastern Beaver County School District, 496 Pa. 590, 437 A. 2d 1198, 1209 (1981). The instant case does not fall within the Rutter exceptions.

choose to accept the testimony of plaintiff Holland and reject the testimony of defendant Rich with regard to gun play prior to the shooting. Further evidence was offered at trial from investigating police officer Commodore Harris to the effect that Rich told Harris the gun went off while Rich was "checking it." In summary, the court did not find that the danger which ultimately confronted Gregory Holland was "glaringly obvious or patent,": Cummings v. Nazareth Borough, 427 Pa. 14, 233 A. 2d 874 (1967), nor that plaintiff Holland knew the danger and willingly accepted the risk of a gunshot wound simply by entering an establishment in the city of Chester where the bartender, even one who had previously wounded himself, possessed a weapon.

## CONTRIBUTORY NEGLIGENCE

Defendants next contend that plaintiff was contributorily negligent because he grabbed for the gun just prior to the shooting. However, the record shows that plaintiff Holland testified he was about five feet from defendant Rich at the time of the shooting, and Rich placed the distance between the two men at about three feet. Rich testified that although Holland grabbed for the gun, Holland did not "come after the gun" but the gun fired as Rich pulled it back. Holland, of course, testified to no gun play and to his preparing to shoot a pool shot at the time of the incident, and Officer Harris, as stated above, testified as to Rich's statement to him that the gun went off while being checked. Harris further testified that his investigation did not reveal any evidence of Holland grabbing for the gun. Rather, Officer Harris testified that "the gun just went off." The burden of establishing contributory negligence is on the defense: Heffernan v. Rosser,

419 Pa. 550, 215 A. 2d 655 (1966), and defendant did not meet that burden from the credible testimony adduced at trial.

## SCOPE OF AUTHORITY

The court finds merit in defendants' argument that bartender Rich was beyond the scope of his employment, and the shooting of patron Holland was not conduct performed to further the business of employer Kirkner. While a master is liable for the torts, even intentional, of his servant if the latter's tortious conduct is within the scope of employment, still liability is only imposed on the employer when the employee's conduct is of a kind the employee was employed to perform and is motivated, at least in part, by a purpose to serve the master: Shuman Estate v. Weber, 276 Pa. Superior Ct. 209, 419 A. 2d 169 (1980). Whether a person acted within the scope of employment is ordinarily a jury question: Orr v. Burns Detective Agency, 337 Pa. 587, 12 A. 2d 25 (1940). "Where, however, the employee commits an act encompassing the use of force which is excessive and so dangerous as to be totally without responsibility or reason, the employer is not responsible *as a matter of law*. (Emphasis Supplied.) If an assault is committed for personal reasons or in an outrageous manner, it is not actuated by an intent of performing the business of the employer and is not done within the scope of employment." Fitzgerald v. McCutcheon, 270 Pa. Superior Ct. 102, 106, 410 A. 2d 1270 (1979), citing, inter alia, Lunn v. Yellow Cab Company, 403 Pa. 231, 169 A. 2d 103 (1961). The Restatement, 2d, Agency, §228, recognizes that conduct of a servant is not within the scope of employment if it is "too little activated by a purpose to serve the master." The conduct of Rich is beyond the scope of his authority.

## NEGLIGENCE OF
## WALTER P. KIRKNER, INDIVIDUALLY,
## AND WALTER P. KIRKNER, INC.

Both Walter P. Kirkner, Inc., acting through Walter P. Kirkner, an officer, director, principal shareholder and manager of the bar, and Walter P. Kirkner, individually, were negligent under the circumstances for not preventing Rich from having a gun while working as a bartender and not discontinuing his employment if he persisted in having a gun in the bar.

Section 302A of Restatement, 2d, Torts (1965) provides that: "An act or omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the negligence or reckless conduct of the other or a third person."

While we have found no Pennsylvania appellate court cases adopting specifically Section 302A of the Restatement, the Superior Court of Pennsylvania has adopted Section 302B which is similar to Section 302A except that it applies to situations where the conduct does not involve a negligent act but an intentional or criminal act[2]: Coath v. Jones, 277 Pa. Superior Ct. 479, 419 A. 2d 1249 (1980). Thus, having adopted Section 302B, we see no reason in logic or public policy not to apply Section 302A as part of the law of this Commonwealth.

In the case at bar, uncontradicted testimony was offered that Rich carried a gun and that this was known to Walter Kirkner. Further, from the evidence, we find Kirkner knew that Rich had,

---

2. An act or omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of the other or a third person which is intended to cause harm even though such conduct is criminal: Section 302B, Restatement, 2d, Torts (1965).

through carelessness, shot himself on at least one prior occasion in the kitchen of Walt's Cafe resulting in hospitalization. Testimony was also offered that Rich had threatened one Harvey Dunn with a gun outside Walt's Cafe prior to the night of the Holland shooting and that Kirkner was present when that event took place. Kirkner failed to instruct Rich not to bring a gun into the bar, and did not dismiss him from employment after the earlier incidents. For these reasons, we conclude that Walter P. Kirkner, Inc. and Walter P. Kirkner, individually, were negligent in not preventing Rich from having a gun in the bar while he was working and for continuing the employment of Rich under the existing circumstances.

To employ as a bartender a person known to be careless with guns and to permit or acquiesce in that person having a gun in a barroom atmosphere is simply asking for trouble. Surely, this exposed patrons of the bar to an unreasonable risk of harm that easily could have been eliminated by not permitting Rich to have a gun in the bar or by terminating his employment.

## PIERCING THE CORPORATE VEIL

In addition to finding Walter P. Kirkner directly liable, as heretofore discussed, we found that the corporate veil of Walter P. Kirkner, Inc. should be pierced and Walter P. Kirkner held personally liable.

The corporate veil may be pierced "to prevent its use as a shield for illegal and wrongful conduct; or where its use, as a technical device, brings about injustice or an inequitable situation so that justice and public policy demand it be ignored." Price Bar, Inc. Liquor License Case, 203 Pa. Superior Ct. 481, 484, 201 A. 2d 221 (1964); McKenna v. Art Pearl

Works, Inc., 225 Pa. Superior Ct. 362, 310 A. 2d 677 (1973). In addition, the corporate veil is properly pierced whenever one in control of a corporation uses that control or corporate assets to further one's own personal interests, thus intermingling his personal interests with the corporation's interests: College Watercolor Group v. William H. Newbauer, Inc., 468 Pa. 103, 360 A. 2d 200 (1976); Hauser Construction Company v. Goldstein, et al., 59 Del. Co. 319 (1972), appeal quashed 434 Pa. 84, 252 A. 2d 616 (1969).

Testimony presented in this case is replete with instances wherein Walter P. Kirkner, an officer and director of the corporation, disregarded corporate responsibilities and used the assets of the corporation as he saw fit for himself, with no accountability, and the corporate entity was a mere alter ego. For example, Kirkner, as president of the corporation, did not know where the corporation checks were kept or even if the corporaton had a checkbook. Kirkner testified that he did not receive a regular salary from the corporation but simply took cash out of the cash register when available, and that cash was paid for both inventory and salary to bartender Rich, with any other money from the register going into Kirkner's own pocket.

Also, the record reveals that in 1976 and 1977, Kirkner filed the business' tax return on a Schedule C, which is used for sole proprietorships. Also, the purported holding of annual corporate meetings for purposes of making applications for renewal of the liquor license was suspect. It is undisputed that no corporate meetings were held for a three year period prior to the trial, and it was only two to three weeks before trial in this matter that Kirkner was given meeting minutes prepared by persons unknown and instructed to sign them as a corpo-

rate officer. The court is persuaded that Walter P. Kirkner dealt with the corporation as his alter ego, and not as a separate entity, and failed to observe or respect corporate formalities. Quite simply, because Kirkner's interests were intermingled with the corporation interests, and because granting the usual prophylactic protection to this corporation would represent an inequitable situation not dictated by justice or public policy, the corporate veil was pierced.

Mrs. Walter P. Kirkner was also a named defendant. Scant evidence was presented concerning her. While she may have been an officer of the corporation, we find no basis upon which to pierce the corporate veil as to her.[3]

## AWARD OF MEDICAL EXPENSES

Finally, defendants object to the award of $14,195.80 to plaintiffs, Dora and James Holland, Sr., for medical bills incurred by their son, plaintiff Gregory Holland, who was a minor, 16 years of age, at the time of this incident. Such objection is totally without merit or foundation. To recover the cost of medical services, a plaintiff must establish that the services were rendered, the charges were reasonable for those services, the care was necessary and the care was related to the injuries suffered: Ratay v. Liu, 215 Pa. Superior Ct. 547, 260 A. 2d 484 (1969); Piwoz v. Iannacone, 406 Pa. 588, 178 A. 2d 707 (1962). Further, the fact that the medical bills

---

3. It appears from the testimony elicited at the trial that Mrs. Kirkner died in September of 1979. Therefore, if she in fact is dead, any verdict against her would be a nullity: Cianchetti v. Kaylen, 63 Del. Co. 83 (1975). No personal representative has been substituted for her and there can be no proceedings against her estate until a fiduciary has been properly appointed: Whitby v. Cottrell, 62 D. & C. 2d 797 (1973).

have not been paid does not prevent them from being recovered: Brown v. White, 202 Pa. 297, 51 Atl. 962 (1902); Pennsylvania Trial Guide, Feldman, Volume 2, Section 34.4 (1978). Parents have a valid claim for medical expenses which were incurred by a minor child: Schmidt v. Kratzer, 402 Pa. 630, 168 A. 2d 585 (1961). In any event, defendants stipulated at trial to the admission of the medical records, reports and bills which documented both the injuries and the care and, hence, defendants cannot be heard to complain as to an award for the charges incurred in connection with the gunshot wound to the abdomen and the subsequent injuries and complications resulting from the wound, the surgical intervention and the medical care rendered.

For the foregoing reasons, the exceptions filed on behalf of defendants, Walter P. Kirkner and Walter P. Kirkner, Inc., are dismissed and judgment entered on the verdict against them. The exceptions of Mrs. Walter P. Kirkner are sustained and judgment non obstante veredicto entered in her favor.

## ORDER

And now, June 21, 1982, exceptions having been filed to the verdict rendered at a trial without jury, and after consideration of the briefs and arguments of counsel before the court en banc, it is ordered that:

1. the motion of plaintiffs to strike the exceptions filed by defendants be and the same is hereby denied;

2. the exceptions of defendants, Walter P. Kirkner and Walter P. Kirkner, Inc. be and the same are hereby dismissed and judgment is hereby entered on the verdict against them; and

3. the exceptions of defendant, Mrs. Walter P. Kirkner are sustained and judgment non obstante veredicto is hereby entered in her favor and against plaintiffs, Gregory Holland, Dora Holland and James Holland, Sr.