456 A.2d 545

**Brad BERMAN, A Minor, By His Parents and Natural Guardians, Leonard BERMAN and Sheila Berman And Leonard Berman and Sheila Berman, In Their Own Right**

v.

**PHILADELPHIA BOARD OF EDUCATION, Appellant.**

Superior Court of Pennsylvania.

Argued June 2, 1982.

Filed Feb. 4, 1983.

Petition for Allowance of Appeal Denied May 18, 1983.

154

156

---

Leon A. Mankowski, Philadelphia, for appellant.

Eugene A. Spector, Philadelphia, for appellees.

Before HESTER, CIRILLO and JOHNSON, JJ.

HESTER, Judge:

In April, 1976, Brad Berman was an eleven year old, fifth grade student, attending Sharswood Elementary School in

Philadelphia. In response to a flyer distributed to each classroom announcing an after-school floor hockey league, Brad enrolled in the program and was assigned to play for the Capitals, one of the eight league teams. All games were played in the school's gymnasium.

Daniel Caputo, a physical education instructor at Sharswood, began the program during the 1974–75 school year. He instructed the student players, at the beginning of each season, that slapshots, raising hockey sticks above the waist, checking and foul language were prohibited. During the 1975–76 school year, which included the date of April 21, 1976 at issue here, the students were equipped with hockey sticks composed of wooden shafts and plastic blades; however, no helmets, face masks, mouth guards, shin guards or gloves were provided.

On April 21, 1976, Brad Berman was facing an opposing player moving toward goal. The opposing player made a backhanded shot and his follow through motion caused the stick blade to strike Brad's mouth. Three maxillary and two mandibular teeth were severed resulting in severe pain and extensive dental treatment.

As a result of the injuries, Brad Berman, a minor, by his parents and natural guardians, Leonard and Sheila Berman, and Leonard and Sheila Berman in their own individual capacities, filed a Complaint in Trespass against appellant, the Philadelphia Board of Education, in the Court of Common Pleas of Philadelphia County. A non-jury trial was conducted on December 12, 1980; however, a verdict was not then returned because the lower court reopened the case for the purpose of admitting life expectancy tables on Brad's life. On April 14, 1981, a verdict was finally entered for Brad Berman in the amount of $83,190.00 and for Leonard and Sheila Berman in the amount of $1,810.00. The appellant's exceptions and amended exceptions to the order of April 14, 1981 were denied, and an Order for Judgment in favor of the appellees in the amounts stated above was entered on August 4, 1981. This appeal followed.

It is the appellant's first contention that there was insufficient evidence to support a finding of negligence. The expert testimony of Cosmo R. Castaldi, a pediatric dentist, and member of the Safety and Protective Equipment Committee of the Amateur Hockey Association of the United States, testified on cross examination that no regulation existed in April, 1976, requiring any kind of mouth guards for participants of amateur ice or floor hockey; consequently, the appellant reasons, no standard of care was established upon which a finding of negligence could stand. Without a regulation to the contrary, Daniel Caputo, as the appellant's agent, was not required to furnish mouth guards. His general instructions, officiating games and calling penalties were sufficient actions to satisfy any applicable standard of care. We disagree with this reasoning and hold that the record supports a finding of negligence.

In *Rutter v. Northeastern Beaver County School District*, 496 Pa. 590, 437 A.2d 1198 (1981), the plaintiff was a sixteen year old student member of the Riverside High School football squad. During a summer session of "jungle football", supervised and conducted by two Riverside coaches, the plaintiff was struck in the right eye by the outstretched hand of a teammate playing for the opposing side. A detached retina and blindness resulted. The particular style of football was especially dangerous in that it was played without any protective equipment whatsoever. At the close of plaintiff's case, the defendant's motion for a compulsory nonsuit was granted. The Pennsylvania Superior Court affirmed the lower court's denial of the plaintiff's motion to strike the nonsuit; the Supreme Court granted allocatur and reversed.

Among other issues, the Supreme Court in *Rutter*, supra, considered whether there was enough evidence of negligence to present a jury question of the School District's liability. In concluding affirmatively, the *Rutter* court was led by the following facts: "jungle football" involved tackling and body blocking without equipment; it was organized, supervised and participated in by the coaches; and, the

students played with intensity in an effort to impress the coaches. We recognize, of course, that our procedural review is somewhat different than that of the *Rutter* court. We are not reviewing the propriety of a lower court's granting of a compulsory nonsuit; rather, we concern ourselves with whether the evidence was sufficient to sustain the nonjury verdict. This distinction is inconsequential; as in *Rutter,* supra, we are determining whether there is enough evidence of negligence to perceive reasonable men disagreeing on the issue of liability.

In review of a lower court verdict, it is not the appellate court's function to substitute its judgment for that of the fact-finder so long as some credible evidence supports the verdict. *City of Pittsburgh v. Readie,* 44 Pa.Cmwlth. 72, 403 A.2d 192 (1979); *Eldridge v. Melcher,* 226 Pa.Super. 381, 313 A.2d 750 (1973). All evidence must be interpreted in favor of the verdict winner below. *Glass v. Freeman,* 430 Pa. 21, 240 A.2d 825 (1968); *Cobosco v. Life Assurance Company,* 419 Pa. 158, 213 A.2d 369 (1965).

In light of these guidelines and our perusal of the record, we find enough evidence supporting a determination of negligence. Daniel Caputo was familiar with the safety and protective equipment available for ice or floor hockey. He was also aware that mouth injuries were recurring consequences of playing the sport. In fact, he appreciated the inherent risks enough to request on two or three separate occasions during the program's first year (1975–76) that the appellant purchase safety equipment for the students. The Philadelphia Board of Education, however, turned a deaf ear to these continual requests; no helmets, shin guards, gloves, face masks or mouth guards were provided for the students until 1977.

The standard of care was not diminished by Dr. Castaldi's admission that no rules or regulations for the adornment of mouth guards were imposed on floor hockey in 1976. The absence of a mouth guard mandate does not necessarily excuse the appellant's failure to impose similar rules itself. A duty of care is imposed upon a board of education for the

safety and welfare of students under conditions such as those before us. *Ayala v. Philadelphia Board of Public Education*, 453 Pa. 584, 305 A.2d 877 (1973). Having found sufficient evidence to support a breach of that duty of care, we must defer to the lower court's judgment.

Appellant's second contention is that the appellee, Brad Berman, assumed the risk of incurring his injury and was contributorily negligent; therefore, an affirmative defense precludes any finding of liability. When considering the tortious acts of minors, we are led by a different set of guidelines and criteria. A determination of the negligence of a minor defendant begins with the application of three presumptions: (1) minors under the age of seven years are conclusively presumed incapable of negligence; (2) minors over the age of fourteen years are presumptively capable of negligence; (3) minors between the ages of seven and fourteen years are presumed incapable of negligence; however, such presumption is rebuttable and grows weaker as the fourteenth year grows closer. *Kuhns v. Brugger*, 390 Pa. 331, 135 A.2d 395 (1957); *Koenig v. Flaherty*, 383 Pa. 187, 117 A.2d 719 (1955). Although these presumptions were initially applied only to minor *defendant*, later decisional law found them applicable to a determination of contributory negligence also. *Dunn v. Teti*, 280 Pa.Super. 399, 421 A.2d 782 (1980); *McIntyre v. Cusick*, 247 Pa.Super. 354, 372 A.2d 864 (1977). The *Dunn* court opined that "utilization of the presumptions solely [with respect to a minor defendant, to] which their application is long recognized and soundly established, would result in holding a child less responsible for his acts when he is a plaintiff than when he is a defendant." In accordance with *Dunn*, supra, we find the effects of immaturity to be equally applicable to a minor plaintiff and minor defendant; consequently, the presumptions of negligence espoused in *Kuhns*, supra, can assist a minor whether he is pursuing or defending a negligence cause of action.

Appellee, Brad Berman, being eleven years of age at the time five of his teeth were severed, is presumed incapa-

ble of contributory negligence. Whether this presumption was rebutted engages a review of his conduct in light of the behavior of a child of similar age, intelligence and experience. *Kuhns,* supra. Under cross-examination, Brad testified that he had played in "a numerous amount" of hockey games prior to the accident. It is not known whether his hockey experience extends to other leagues or years previous to the accident; accordingly, we conclude only that his experience with playing hockey was gathered entirely from those games played earlier in the season at Sharswood Elementary School. Furthermore, we find no evidence in the record that portrays Brad as a young boy possessed of superior intelligence thereby giving him exceptional perceptions of the risks and dangers of hockey. Neither his experience nor intelligence was so outstanding, then, to rebut the presumption against a finding of negligence. It should be noted further that Daniel Caputo testified to the nonoccurrence of any other injuries during the 1975–76 hockey campaign; therefore, Brad was unable to witness any serious injury by which we could charge him with knowing the risks involved. Without support in the record to the contrary, we must defer to the lower court's judgment that the presumption rendering Brad Berman incapable of contributory negligence was not rebutted by the appellant.

■ When judging the negligence or contributory negligence of parties less than majority age, an objective standard is applied. The standard applied to a minor who allegedly assumes the risk of incurring injury, however, is a subjective one, concerning only what a *particular* minor plaintiff knows, sees, hears, comprehends and appreciates. Restatement of Torts 2d, Section 496D, Comment C. Through the application of different tests, a plaintiff may be deemed to not have assumed the risk, yet a finding of contributory negligence for the same behavior is possible. For this reason, assumption of the risk and contributory negligence remain separately applied defenses.

We agree with the appellant to the extent that the assumption of risk doctrine was not abolished in *Rutter*, supra; however, we do not agree that the lower court erred in finding Brad Berman to not have assumed the risk. Justice Roberts, a dissenting jurist in *Rutter*, supra, noted that inasmuch as only three members of the seven-member court joined in Justice Flaherty's opinion abrogating the assumption of risk doctrine, assumption of risk remains a tenable mechanism at a defendant's disposal. *Vargus v. Pitman Manufacturing Co.*, 675 F.2d 73 (1982), expressly espoused Justice Robert's interpretation of *Rutter's* effect on the assumption of risk doctrine. The *Vargus* court reasoned that insofar as Justice Robert's reference to the continuing vitality of assumption of risk went unanswered by the other members of the court, *Rutter*, supra, is not controlling precedent for the abrogation of that defense.

Unlike the theory of contributory negligence, we are not predisposed to apply the *Kuhn* presumptions to minors alleged to have assumed the risk of injuries; we find such presumptions to be incongrous to a defense theory whose success depends upon a purely subjective analysis. Without the aid of the *Kuhn* presumptions, we review Brad Berman's actions in light only of his own particular human characteristics. If by reason of his tender age and lack of intelligence, experience and information, Brad did not appreciate the dangers of floor hockey, assumption of risk is not a viable defense. The trial judge obviously reached that conclusion; absent some overwhelming evidence to the contrary, we will not deem this determination to be an abuse of discretion.

Next, the appellant maintains that the damages were set without legal foundation and contrary to the evidence. Appellant alleges that there was no expert testimony as to permanency of injury, cost of repair and prognosis of the scar and cost of future treatments. With respect to permanent disability, the appellant insists that there was no expert testimony on the consequences of the injury; rather the prognosis included only an opinion of the medical fears,

a practice denounced in *Baccare v. Mennella,* 246 Pa.Super. 53, 369 A.2d 806 (1976).

In *Baccare,* supra, the plaintiff sustained injuries to his head, left shoulder, left arm and lower back as a result of a collision between defendant's truck and his automobile. The plaintiff recovered from all injuries except for persistent back ailments. At trial, the plaintiff testified to the back pain and his treating physician testified to the medical reasons for the pain; however, the same physician was unable to project future pain, complications, medical treatment or medical expenses. The *Baccare* court concluded that this testimony only promotes a "mere possibility" of continuing or permanent medical problems, which allows the jury to speculate when assessing damages. We do not believe the dental testimony here of future medical complications follows the same vein as that in *Baccare,* supra.

Dr. Israel A. Domsky, Brad Berman's treating dentist testified, inter alia, that the five plastic crowns placed over the severed teeth can reasonably be expected to last between ten to twelve years. The doctor explained that factors such as the continuing development of Brad's jaw, the possible exposure of the remaining portion of the severed teeth and the temporary composition of the plastic caps are likely to necessitate recapping in ten to twelve years. This is more than mere conjecture. In *Baccare,* supra, there was no indisputable aesthetic deficiency that required constant observation. In light of Dr. Domsky's precise testimony of the cost of his immediate treatment for alleviation of Brad's pain and the construction and application of plastic caps and applicable inflationary measures, there was further evidence of an estimated cost of replacing the plastic caps in 10 to 12 years. Having this testimony at his disposal, the judge did not merely speculate or imagine future medical expenses.

Appellant argues further that the trial judge abused his discretion in permitting extensive cross examination by appellee's counsel of Daniel Caputo. Under direct examination by appellant's counsel, Daniel Caputo testified to his

actions in supervising the floor hockey season. For instance, he instructed the students on the prohibition of slapshots, checking, foul language and raising the sticks above the waist; he organized the hockey season to run from early November through early May; he officiated all games; and, he observed the entire injury-inflicting event. His direct examination was succinct and short. On cross-examination, however, Mr. Caputo was asked whether any protective equipment such as helmets, face and mouth guards, gloves and shin guards were used; whether he was aware of the availability and cost of certain protective hockey equipment; whether he investigated the need for parental permission before students could play; whether he observed similar mouth injuries in hockey prior to the incident at issue; and, whether he had ever requested funds from the appellant school district for the purchase of protective equipment before Brad's injury. The appellant asserts that these inquiries were impermissible in that they exceeded the scope of direct examination.

Cross-examination is not restricted to only those subjects testified to on direct testimony; it extends to any facts that tend to refute inferences elicited on direct examination. *Commonwealth v. Sweet,* 232 Pa.Super. 372, 335 A.2d 420 (1975); *Commonwealth v. Lopinson,* 427 Pa. 284, 234 A.2d 552 (1967). *Commonwealth v. Mickens,* 201 Pa. Super. 48, 191 A.2d 719 (1963), expands the "inference" standard in permitting the cross-examination of an adverse witness concerning any matter within his knowledge, including any matter that challenges or qualifies direct examination.

Daniel Caputo was called as the appellant's witness for the ostensible purpose of portraying his cautious and responsible behavior in organizing and administering the floor hockey competition. This was evidenced by inquiries into his explanation of the rules. These direct inquiries inferred conduct satisfying the applicable standard of care and permitted further inquiry into care or lack thereof on cross examination. Inquiry into the wearing of protective equipment, the request for purchasing such equipment, and

the witness' familiarity with hockey injuries and protective equipment not only addresses the inference of due care on direct examination, but tends to destroy it as well. We find no error in the breadth of cross examination.

 Finally, appellant alleges that the lower court erred in re-opening the appellee's case for the purpose of introducing life expectancy tables. As the appellant itself admits, a trial judge may permit a party to re-open his case. *Warren v. Mosites Construction Co.,* 253 Pa.Super. 397, 385 A.2d 397 (1978). Absent an abuse of discretion, the decision to permit a party to re-open his case will not be reversed on appeal. *Silver v. Miller,* 204 Pa.Super. 16, 201 A.2d 308 (1964). The appellant offers no proof that there was an abuse of discretion; he merely asserts that it was error to give the appellees a "second chance" to prove damages. This mere assertion does not advance his position.

Judgment affirmed.