Philadelphia Redevelopment : 
Authority of City of Philadelphia : 
                                       : 
       v. : 
                                         : 
Steve Atuahene, :   No. 332 C.D. 2019
                Appellant :   Submitted: December 6, 2019

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION BY
JUDGE COVEY                             FILED: April 22, 2020

      Steve Atuahene (Atuahene) appeals, pro se, from the Philadelphia County Common Pleas Court's (trial court) January 24, 2019 order sustaining the Philadelphia Redevelopment Authority (Redevelopment Authority) of the City of Philadelphia's (City) preliminary objections (Redevelopment Authority's Preliminary Objections) to Atuahene's Preliminary Objections and Petition for Appointment of a Board of Viewers (Petition) and dismissing Atuahene's Preliminary Objections and Petition. Essentially, Atuahene presents three issues for this Court's review: (1) whether the trial court erred by dismissing Atuahene's Preliminary Objections and Petition as time-barred; (2) whether the Redevelopment Authority failed to join an indispensable party; (3) whether the trial court erred by denying Atuahene discovery and/or a hearing relative to the City's 2004-2005 purported *de facto* taking/inverse condemnation and dismissing the Petition.[1] After review, we affirm in part, and vacate and remand in part.

---

[1] In the interest of clarity, this Court combined and reordered Atuahene's issues.

**Facts**

In 2012, Atuahene owned the property located at 4653 North Warnock Street in Philadelphia (Property). On July 10, 2012, pursuant to the Urban Redevelopment Law (URL)[2] and the Eminent Domain Code (Code),[3] the Redevelopment Authority issued Resolution No. 19,338 (Resolution), to acquire title to land necessary to redevelop the area known as the Logan Redevelopment Area, Logan Urban Renewal Area, Condemnation 1C (Logan Redevelopment), which included the Property.[4] *See* Reproduced Record (R.R.) at 13a-16a.

On December 14, 2012, pursuant to the Resolution, the Redevelopment Authority filed a Declaration of Taking (Declaration) in the trial court. *See* R.R. at 9a-21a. According to the Proof of Service of Notice to Condemnees, Mortgagees and Lienholders (Proof of Service), the Redevelopment Authority served notice of the Declaration on the owners of the condemned properties by certified mail, and by

---

[2] Act of May 24, 1945, P.L. 991, *as amended*, 35 P.S. §§ 1701-1719.2.

[3] 26 Pa.C.S. §§ 101-1106.

[4] Section 9 of the URL specifies, in relevant part:

> An [a]uthority shall constitute a public body, corporate and politic, exercising public powers of the Commonwealth as an agency thereof, which powers shall include all powers necessary or appropriate to carry out and effectuate the purposes and provisions of this [URL], including the following powers in addition to those herein otherwise granted:
>
> . . . .
>
> (i) To acquire by eminent domain any real property, including improvements and fixtures for the public purposes set forth in this act, in the manner hereinafter provided, except real property located outside a redevelopment area[.]

35 P.S. § 1709. Section 12.1(a) of the URL, added by Section 2 of the Act of June 23, 1978, P.L. 556, states: "[A]ny [r]edevelopment [a]uthority shall have the power to acquire by purchase, gift, bequest, eminent domain or otherwise, any blighted property as defined in this section . . . . This power shall be exercised in accord with the procedures set forth in this section." 35 P.S. § 1712.1(a). "[The] [p]ower of eminent domain shall be exercised pursuant to a resolution of the [r]edevelopment [a]uthority and the procedure set forth in the [Code.]" 35 P.S. § 1712.1(g).

2

posting and advertising. *See* R.R. at 20a-21a. The Proof of Service reflects that the Redevelopment Authority served notice of the Declaration upon Atuahene by December 19, 2012 certified mailing. *See* R.R. at 21a, 49a. After two certified mailings to Atuahene's last known address were returned as undeliverable, the Redevelopment Authority advertised notice in the Philadelphia Daily News and the Legal Intelligencer on December 26, 2012, and posted on the Property on December 28, 2012. *See* R.R. at 21a, 43a-45a, 49a; *see also* Original Record (O.R.) Item 19 at Ex. C.

On December 2, 2014, the Redevelopment Authority filed a petition for leave to pay into the trial court estimated just compensation for properties condemned for the Logan Redevelopment, including $400.00 for the Property. *See* O.R. Item 9, Ex. A at 2. The trial court granted the petition on January 13, 2015, and the Redevelopment Authority deposited the monies with the trial court on March 11, 2015, for eventual distribution to Atuahene and other parties in interest. *See* O.R. Items 10, 11.

On October 4, 2018, Atuahene filed a petition to intervene in the Redevelopment Authority's condemnation action. *See* O.R. Item 14. On November 9, 2018, after a hearing, the trial court granted Atuahene's petition to intervene.

On November 19, 2018, Atuahene filed his Preliminary Objections to the Declaration, seeking to dismiss the Declaration for lack of notice (Objection No. 1) and/or strike it as invalid because the City previously condemned the Property (Objection No. 2). *See* R.R. at 22a-33a. Specifically, Atuahene contends that the Redevelopment Authority's notice was deficient because the City has been aware since 1990 that his legal and residential address was 5800 North 17th Street, Philadelphia, PA 19141 (North 17th Street Address). *See* Atuahene Prelim. Obj. at 6; R.R. at 29a. Atuahene also asserts that, between December 2004 and January 2005, the City demolished the Property without pre- and post-deprivation notice "[a]s part

3

of a strategy . . . to make way for [the Redevelopment Authority] to later file [the Declaration] to condemn Frempong-Atuahene's properties at no cost or at [a] lower cost to [the Redevelopment Authority]" and, thus, the Declaration is void.  Atuahene Prelim. Obj. at 6; R.R. at 29a.  Atuahene included the Petition in his Preliminary Objections, requesting therein that a board of viewers be appointed to assess damages to which Atuahene is entitled by reason of the City's 2004-2005 *de facto* taking/inverse condemnation of the Property.  *See* R.R. at 29a-31a.

On December 7, 2018, the Redevelopment Authority filed its Preliminary Objections to Atuahene's Preliminary Objections, claiming that Atuahene's Preliminary Objections are barred by Section 306 of the Code, 26 Pa.C.S. § 306 (relating to limitations period for preliminary objections to declarations of taking).  *See* R.R. at 34a-38a, 47a-51a; *see also* Redevelopment Authority's Supplemental Reproduced Record (S.R.R.) at 1b-5b, 18b-22b.  The Redevelopment Authority's Preliminary Objections also challenged the Petition, stating that it was barred by Section 19.2 of the URL, 35 P.S. § 1719.2 (relating to limitations period for challenging just compensation).[5]  *See* R.R. at 38a-39a, 51a-53a; *see also* Redevelopment Authority's S.R.R. at 5b-6b, 22b-24b.  On January 7, 2019, Atuahene filed his answer to the Redevelopment Authority's Preliminary Objections.  *See* R.R. at 55a-64a.

On January 24, 2019, in two separate orders, the trial court sustained the Redevelopment Authority's Preliminary Objections, overruled Atuahene's Preliminary Objections and dismissed Atuahene's Preliminary Objections and the Petition.  *See* O.R. Items 21, 22.  Atuahene appealed to this Court.  Pursuant to the trial court's March 5, 2019 order, Atuahene filed a statement of errors complained of

---

[5] Added by Section 3 of the Act of October 2, 2002, P.L. 796.

on appeal on March 26, 2019. *See* O.R. Item 27. The trial court issued its opinion on July 23, 2019. *See* R.R. at 66a-79a.

## Discussion

Atuahene argues that the trial court erred by dismissing his Preliminary Objections and his Petition as time-barred because the Redevelopment Authority's failure to strictly comply with the Code's notice requirements and constitutional due process of law caused his late filings.

"[A] condemnation proceeding . . . encompasses two distinct proceedings. The first goes to the propriety and validity of the taking, including whether a taking has been effected [(i.e., preliminary objections)]. The second goes to damages [(i.e., petition to appoint board of viewers)]." *Petition of Ramsey*, 375 A.2d 886, 888 (Pa. Cmwlth. 1977).

### 1. Preliminary Objections

"[This] [C]ourt's review of a trial court's decision to sustain or overrule preliminary objections to a declaration of taking 'is limited to a determination of whether the trial court abused its discretion or committed an error of law.'" *In re Condemnation by Dep't of Transp., of Right-of-Way for State Route 0022, Section 034 in Twp. of Frankstown v. Commonwealth*, 194 A.3d 722, 728 n.8 (Pa. Cmwlth. 2018) (quoting *In re Redevelopment Auth. of the City of Phila.*, 938 A.2d 341, 345 (Pa. 2007)).

> The power of discretion over what areas are to be considered blighted[, like the Logan Redevelopment area,] is solely within the power of the [Redevelopment] Authority. **The only function of the courts in this matter is** to see that the [Redevelopment] Authority has not acted in bad faith; to see that the [Redevelopment] Authority has not acted arbitrarily; **to see that the [Redevelopment]**

5

**Authority has followed the statutory procedures in making its determination; and finally, to see that the actions of the [Redevelopment] Authority do not violate any of our constitutional safeguards**.

*In re Condemnation by Urban Redevelopment Auth. of Pittsburgh*, 822 A.2d 135, 138 (Pa. Cmwlth. 2003) (emphasis added). Here, the trial court dismissed Atuahene's Preliminary Objections as time-barred.

"In eminent domain cases, preliminary objections are intended as a procedure to resolve expeditiously the factual and legal challenges to a declaration of taking before the parties proceed to determine damages." *Twp. of Millcreek v. Angela Cres Tr. of June 25, 1998*, 142 A.3d 948, 952 n.2 (Pa. Cmwlth. 2016). Accordingly, Section 306(a)(1) of the Code mandates: "Within 30 days after being served with notice of condemnation, the condemnee may file preliminary objections to the declaration of taking." 26 Pa.C.S. § 306(a)(1). However, Section 306(a)(2) of the Code authorizes that "[t]he [trial] court upon cause shown may extend the time for filing preliminary objections." 26 Pa.C.S. § 306(a)(2). Specifically, **a trial court may permit late filing where the condemnee offers good cause and the condemnor is responsible for the delay**. *See In re Condemnation of .036 Acres, More or Less, of Land Owned by Wexford Plaza Assocs.*, 674 A.2d 1204 (Pa. Cmwlth. 1996) (a trial court properly dismissed late-filed preliminary objections where the condemnee offered no good cause for the delay and the condemnor was not responsible therefor); *see also Appeal of Hill*, 545 A.2d 463 (Pa. Cmwlth. 1988). Consequently, whether the trial court erred by dismissing Atuahene's Preliminary Objections as time-barred depends upon whether the Redevelopment Authority properly served him with notice.

The law is well settled that "[t]he [Code] is the exclusive procedure for giving notice to a condemnee of the declaration of taking." *N. Penn Water Auth. v. A*

6

*Certain Parcel of Land*, 650 A.2d 1197, 1200 (Pa. Cmwlth. 1994). Section 305 of the Code specifies, in pertinent part:

> **(a) Written notice.--**Within 30 days after the filing of the declaration of taking, the condemnor shall give written notice of the filing to the condemnee, to any mortgagee of record and to any lienholder of record.
>
> **(b) Service.--**
>
> (1) The notice shall be served, within or without this Commonwealth, . . . **by registered mail to the last known address of the person being served**.[6]
>
> (2) **If service cannot be made in the manner set forth under paragraph (1), then service shall be made by posting a copy of the notice upon the most public part of the property and by publication** of a copy of the notice, . . . one time each in one newspaper of general circulation and the legal journal, if any, published in the county.
>
> . . . .
>
> **(e) Proof of service.--**The condemnor shall file proof of service of the notice.

26 Pa.C.S. § 305 (bold text emphasis added). This Court has declared that "[s]trict compliance with [] service requirement[s] protect[] the procedural due process rights of all interested parties to notice and an opportunity to be heard and also guards against deprivation of property without substantive due process of law." *City of Phila. v. Manu*, 76 A.3d 601, 606 (Pa. Cmwlth. 2013).

Here, the Redevelopment Authority represented that it twice sent notice of the Declaration to Atuahene by certified mail to the Property, and both mailings were returned as undeliverable. *See* Redevelopment Authority Prelim. Obj. at 3-5; R.R. at 36a-38a. Thereafter, "the [Redevelopment] Authority, in accordance with the

---

[6] "Where the notice is mailed, the condemnor has the option of using either certified or registered mail." 26 Pa.C.S. § 305, Comments.

7

[Code], served [Atuahene] with notice of the [c]ondemnation action on December 26, 2014 (by advertising) and December 28, 2014 (by posting)." Redevelopment Authority Prelim. Obj. at 3-5; R.R. at 36a-38a. The Redevelopment Authority filed proof of service in the trial court, attached to which was an affidavit by Redevelopment Authority employee Anthony Leuzzi (Leuzzi) that he "personally posted [notice] on the premises of the attached list of properties [(including the Property)]." R.R. at 43a; *see also* R.R. at 20a-21a, 42a-47a. The trial court concluded that, since the Redevelopment Authority issued notice by posting at the Property and by local publication,[7] Atuahene was properly served.

However, Section 305(b) of the Code specifies that, **_before_ posting and publication constitute acceptable notice, the Redevelopment Authority must have first served Atuahene by certified mail at his "last known address**." 26 Pa.C.S. § 305(b)(1) (emphasis added). Although the Code does not specifically define the phrase "last known address," 26 Pa.C.S. § 305(b)(1), this Court has ruled in municipal tax sale cases that a taxpayer's last known address is "the last address [an authority] can be charged with knowing."[8] *Merchants Nat'l Bank of Allentown v. Chevy Chase Inv. Co., Inc.*, 397 A.2d 836, 838 n.2 (Pa. Cmwlth. 1979); *see also Return of Tax Sale by Indiana Cty. Tax Claim Bureau v. Clawson*, 395 A.2d 703 (Pa. Cmwlth. 1979).

The Redevelopment Authority sent the notice of Declaration to the Property's physical address. It is not clear from the record whether the Property's

---

[7] Atuahene contends that, since the Redevelopment Authority's advertisement listed "Steve Atunhene" at a "wrong address," neither he nor the public were put on notice of the Declaration. Atuahene Br. at 14. Because the Property's address was correct, and Atuahene's last name was incorrect by only one letter, Atuahene and the public were nevertheless on notice of the Declaration. Accordingly, the error was harmless.

[8] "[B]ecause both condemnation notices and tax sale notices involve a governmental taking of private property, the same due process safeguards [for notice] apply." *In re Tax Claim Bureau of Beaver Cty. Tax Sale September 10, 1990*, 600 A.2d 650, 654 n.4 (Pa. Cmwlth. 1991); *see also Pivirotto v. City of Pittsburgh*, 528 A.2d 125 (Pa. 1987).

address was the only address the Redevelopment Authority could be charged with knowing. Atuahene claimed in his Preliminary Objections that, "[a]t all times relevant and necessary[,] the City knew and was aware [] [Atuahene's] legal and residential address since 1990 [w]as [the North 17th Street Address]."[9] Atuahene's Preliminary Objections at 6; R.R. at 29a. However, that purported fact is not of record. Atuahene has held himself out to the City and this Court as Steven Atuahene, Stephen A. Frempong, Steven Frempong, Stephen Frempong Atuahene, Stephen Atuahene Frempong, and Frempong-Atuahene.[10] *See City of Phila. v. Frempong* (Pa. Cmwlth. No. 228 C.D. 2019, filed January 22, 2020), slip op. at 3 n.3.[11] The North 17th Street Address is among Atuahene's *numerous* documented addresses. *See id.*

The Pennsylvania Supreme Court has held that, "due process . . . requires at a minimum that an owner of land be actually notified by government, if reasonably possible, before his land is forfeited by the state." *Tracy v. Chester Cty., Tax Claim Bureau*, 489 A.2d 1334, 1339 (Pa. 1985); *see also City of Phila. v. Jones*, 221 A.3d 737 (Pa. Cmwlth. 2019). The United States Supreme Court has concluded: "[A]t the end of the day, [] someone who actually wanted to alert [a property owner] that he was . . . losing his [property] would do more when the attempted notice letter was returned unclaimed, and there was more that reasonably could be done." *Jones v. Flowers*, 547 U.S. 220, 238 (2006). The *Tracy* Court specifically ruled that, "*where [a] mailed notice has not been delivered because of an inaccurate address*, the authority must make a *reasonable effort* to ascertain the identity and whereabouts

---

[9] In his brief to this Court, Atuahene claims that the North 17th Street Address was known to the City's Department of Licenses and Inspections and its Office of Property Assessment. *See* Atuahene Br. at 13.

[10] Atuahene refers to himself as Steve Frempong-Atuahene in the Petition. *See* Atuahene Preliminary Objections at 29a.

[11] This Court acknowledges that its unreported memorandum opinions may only be cited "for [their] persuasive value, but not as binding precedent." Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a). *Frempong* is not cited herein as legally binding precedent, but as judicial notice of its opinion.

of the owner(s)." *Tracy*, 489 A.2d at 1338-39. Accordingly, when "[r]easonable efforts to effect actual notice [are] not carried out . . . , [] the [property's] sale . . . must be set aside." *Id.* at 1339.

Here, after the notice the Redevelopment Authority sent by certified mail to the vacant Property was returned as undeliverable, the Redevelopment Authority was obliged to make a reasonable effort to ascertain an alternate address for Atuahene. At the same time, although it may be true that Atuahene's North 17th Street Address appears elsewhere among the City's vast records, there is nothing in this record to show that the Redevelopment Authority had access to the City's records, or knew or could reasonably determine that Atuahene should or would receive notice at any address other than the Property, let alone the North 17th Street Address.[12]

Based upon the defective notice claims in Atuahene's Preliminary Objections, there existed a question of fact regarding the last address the Redevelopment Authority could be charged with knowing. Section 306(f)(2) of the

---

[12] In *City of Philadelphia v. Morris Park Congregation of Jehovah's Witnesses* (Pa. Cmwlth. No. 264 C.D. 2015, filed March 7, 2016), the property owner failed to update its address with the City and claimed that the City should have searched its various department records for its correct address. The Court concluded:

> The [Municipal Claims and Tax Liens Act (MCTLA), Act of May 16, 1923, P.L. 207, *as amended*, 53 P.S. §§ 7101-7505,] does not require the City to search through the records of each of its many [d]epartments prior to initiating a [s]heriff's sale to collect municipal taxes. Moreover, the record does not support [the a]ppellant's argument that the City had notice of the correct contact information for [the a]ppellant and failed to act upon it. . . . [T]he contact addresses, individuals, and named organizations differ. Had the City searched the records of its many [d]epartments and discovered these records, there was no basis to conclude which address was correct or that one of the many provided was more likely to reach [the a]ppellant than the address on [the a]ppellant's deed.

*Morris Park Congregation*, slip op. at 9-10 (footnote omitted). *Morris Park Congregation* is cited herein for its persuasive value. *See* 210 Pa. Code § 69.414(a).

Code directs: "If an issue of fact is raised, the [trial] court shall take evidence by depositions or otherwise." 26 Pa.C.S. § 306(f)(2). Because it was not evident on the face of the record presented, the trial court should have conducted a hearing or ordered the taking of discovery to determine whether the Redevelopment Authority's certified mailings were sent to Atuahene's last address the Redevelopment Authority was charged with knowing. The trial court erred by not doing so.

Moreover, "when it comes to the location of posting, each case will be fact-specific, depending on the unique nature of the property and the particular placement of the notice on the property." *U.S. Nat'l Bank Ass'n v. United Hands Cmty. Land Tr.*, 129 A.3d 627, 635 (Pa. Cmwlth. 2015). Although the affidavit attached to the Redevelopment Authority's Proof of Service states that Leuzzi posted notice on the Property on December 28, 2012, the affidavit does not represent that notice was posted "upon the most public part of the [P]roperty." 26 Pa.C.S. § 305(b)(2).

This Court acknowledges the presumption of regularity set forth in Section 6104(a) of the Judicial Code, which states: "A copy of a record of governmental action or inaction authenticated as provided in [S]ection 6103 [of the Judicial Code] (relating to proof of official records) shall be admissible as evidence that the governmental action or inaction disclosed therein was in fact taken or omitted." 42 Pa.C.S. § 6104(a). The presumption of regularity is *prima facie* evidence that public officials will properly carry out their official duties, unless and until contrary evidence is presented. *See U.S. Nat'l Bank Ass'n*; *see also Hughes v. Chaplin*, 132 A.2d 200 (Pa. 1957); *Picknick v. Wash. Cty. Tax Claim Bureau*, 936 A.2d 1209 (Pa. Cmwlth. 2007). However, this Court has ruled that, under that presumption, **an affidavit of posting establishes only that a property was posted, and not that it was posted on the most public part of the property**, as Section

11

305(b)(2) of the Code requires.[13] *See U.S. Nat'l Bank Ass'n; see also Duquesne City v. Comensky* (Pa. Cmwlth. No. 389 C.D. 2016, filed February 1, 2017); *City of Phila. v. Morris Park Congregation of Jehovah's Witnesses* (Pa. Cmwlth. No. 264 C.D. 2015, filed March 7, 2016).[14]

> This Court has explained:
>
> [T]he City was granted the power to take private property, a power so extraordinary under our system of governance that it is constitutionally restrained. In accordance with this constitutional restraint, the General Assembly established strict procedural requirements that a municipality must follow to exercise its power to take private property . . . . The momentous nature of the act of taking property . . . likewise requires the courts to examine the record in a [condemnation matter] with a close, independent and vigorous eye to ensure that the procedural requirements for notice . . . have been adhered to and due process of law has been adequately safeguarded.

*Morris Park Congregation*, slip op. at 12. "The [t]rial [c]ourt had a duty to conduct an independent inquiry to ascertain if the [Redevelopment Authority] had fulfilled its statutory and constitutional obligations; by failing to do so here, the [t]rial [c]ourt abused its discretion[.]" *Id*.

However,

> [t]here is no evidence in the record that [notice was] posted on the most public part of the Property. The record does not contain testimony from [Leuzzi] or from the

---

[13] "[T]he presumption afforded a public official cannot overcome a statutory mandate." *Morris Park Congregation*, slip op. at 7.

[14] In so ruling, the Court interpreted the MCTLA. However, like Section 305(b)(2) of the Code, Section 39.2(a)(1) of the MCTLA, added by Section 4 of the Act of December 14, 1992, P.L. 859, requires that notice be posted "on the most public part of the property[.]" 53 P.S. § 7193.2(a)(1).

A public official's affidavit declaring merely the date and time that a property was posted may be sufficient under the Real Estate Tax Sale Law, Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. §§ 5860.101-5860.803, or similar statute that does not require posting on the most public part of a property. *See Barylak v. Montgomery Cty. Tax Claim Bureau*, 74 A.3d 414 (Pa. Cmwlth. 2013).

12

[Redevelopment A]uthority elucidating the general practice [it] follows when posting properties under the [Code] or specifically when posting vacant properties. . . . Accordingly, there is no credible evidence of record to support the conclusion that the [Redevelopment Authority] complied with the posting requirement mandated by the [Code]. . . .

The facts in this case also demonstrate the importance of posting where the [Redevelopment A]uthority has knowledge that service has otherwise been ineffective.

*Morris Park Congregation*, slip op. at 7.

In a first class city in this Commonwealth,[15] proper posting is not only an additional reasonable step that should be taken to adequately safeguard constitutional due process once a municipal authority has knowledge that service through the mail was ineffective, but a basic and longstanding statutory obligation.

*Id.*, slip op. at 11-12. Because it was not evident on the face of the record presented, the trial court should have conducted a hearing or ordered the taking of discovery to determine whether the Redevelopment Authority posted at the most public part of the Property. The trial court erred by not doing so.

This Court acknowledges that "the notice provisions of the [] Code are strictly construed insofar as the irregularities in the procedural aspects of the condemnation are *prejudicial*." *In re Condemnation ex rel. Com., Dep't of Transp.*, 76 A.3d 101, 109 (Pa. Cmwlth. 2013). Therefore,

an owner of condemned property must establish prejudice as a result of defective notice in order to prevail against a statute of limitations defense asserted by the condemnor. The mere existence of a procedural defect is insufficient, in and of itself, to extend the time for objecting to a declaration of taking or petitioning for an appointment of a

---

[15] "Philadelphia is the only city of the first class in the Commonwealth." *Jones*, 221 A.3d at 743 n.16 (quoting *Blount v. Phila. Parking Auth.*, 965 A.2d 226, 228 n.4 (Pa. 2009)).

> board of viewers. In other words, in a situation where notice to the owner was defective, the owner must establish that the defective notice prejudiced the owner by preventing the owner from timely asserting its rights.

*Id.* at 109-10. Here, Atuahene asserted in his Preliminary Objections that the Redevelopment Authority's defective notice prevented him from timely filing them. Whether that was true could have been determined by the trial court at a hearing or by ordering discovery on the issue.

Based on the foregoing, the trial court erred by concluding without a hearing that Atuahene received proper notice of the Declaration and that his Preliminary Objections were time-barred. Therefore, we vacate the portion of the trial court's order dismissing Atuahene's Preliminary Objections and remand the matter to the trial court for further fact-finding consistent with this opinion.

## 2. Petition

"[This Court's] review of a trial court's ruling on preliminary objections to a petition for appointment of a board of viewers is limited to determining whether an error of law was committed or whether necessary findings of fact are supported by substantial evidence." *Dep't of Transp.*, 76 A.3d at 106 n.7.

The trial court dismissed Atuahene's Petition as time-barred. Section 19.2 of the URL states that "a proceeding to challenge just compensation . . . if a redevelopment authority has exercised powers of condemnation . . . is subject to a one-year statute of limitations." 35 P.S. § 1719.2; *see also Alpha Fin. Mortg., Inc. v. Redevelopment Auth. of Fayette Cty.*, 152 A.3d 375 (Pa. Cmwlth. 2016).

> '[T]he statute of limitations for filing a petition for appointment of a [b]oard of [viewers begins] to run from the *payment of estimated just compensation.*' *Wyland v. Dep't of Transp.*, 799 A.2d 954, 956 (Pa. Cmwlth. 2002) (emphasis added). . . . [T]he statute of limitations does not

14

run from the filing of the declaration of taking or notice thereof.

*Dep't of Transp.*, 76 A.3d at 107. Since the Redevelopment Authority paid Atuahene's estimated just compensation to the trial court on March 11, 2015, pursuant to Section 19.2 of the URL, Atuahene had until March 10, 2016 to file the Petition. Because he filed his Petition on November 19, 2018, it was more than two and one-half years late. *See Alpha Fin. Mortg., Inc.* (petitions to appoint viewers filed more than two years after a redevelopment authority paid estimated just compensation are untimely).

Notwithstanding, the Petition was not properly before the trial court in the first instance. Relevant to the Petition, Atuahene alleged in his Preliminary Objections:

> 2. Between December 20, 2004 and January 30, 2005[,] the [City] seized the [P]roperty, posted [sic] cease and desist [o]rder and thereafter demolished said premises.

R.R. at 25a. In the Petition, Atuahene requested appointment of a board of viewers because:

> 6. At all times relevant and necessary[,] [Atuahene] did not receive any notices of violation from Department of Licenses and Inspections of the [City] related to code violations that could have resulted in the demolition of [the Property].
>
> 7. In both instances[,] both the City and [the Redevelopment Authority] intentionally deny [sic] [] Frempong-Atuahene[] the statutory notices so that they could acquire [his] properties without paying required just compensation.
>
> 8. In this instant case[,] the City under the pretext of its police power seized and demolished [Atuahene's] [P]roperty a 4653 Warnock Street, Philadelphia, PA 19140 between December 2004 and January 30, 2005 without any statutory and municipal laws, notices and opportunities to be heard in clear violation of constitutional due process.

15

. . . .

13. In the seizure and demolition of subject [P]roperty without requisite pre- and post-deprivation notices such demolition was arbitrary, unreasonable, capricious, reckless and unrelated to the public health, safety, morals and general welfare.

14. Said City's action in the demolition of subject [P]roperty was unconscionable, to say the least and it constitutes a Taking under the Takings Clause which is compensable under the Takings Clause of [the] 5th and 14th Amendment[s] to the United States Constitution, [] Article [I], [Section] 10 of [the] Pennsylvania Constitution and the [Code].

R.R. at 29a-31a. Atuahene asserts that the City should have been joined as an indispensable party, and that he is entitled to compensation for the City's 2004/2005 *de facto* taking/inverse condemnation.

### a. Indispensable Party

"Failure to join an indispensable party deprives the Court of subject matter jurisdiction and is fatal to a cause of action." *Bucks Cty. Servs., Inc. v. Phila. Parking Auth.*, 71 A.3d 379, 387 (Pa. Cmwlth. 2013). Accordingly, "[n]o court may grant relief in the absence of an indispensible [sic] party." *Nicoletti v. Allegheny Cty. Airport Auth.*, 841 A.2d 156, 163 (Pa. Cmwlth. 2004) (quoting *Biernacki v. Redevelopment Auth. of the City of Wilkes-Barre*, 379 A.2d 1366, 1368 (Pa. Cmwlth. 1977)).

This Court has expounded:

'A party is generally regarded to be indispensable 'when his or her rights are so connected with the claims of the litigants that no decree can be made without impairing those rights.'' *HYK Constr[.] Co[.], Inc. v. Smithfield T[wp.]*, 8 A.3d 1009, 1015 (Pa. Cmwlth. 2010) (quoting *City of Phila[.] v. Commonwealth*, . . . 838 A.2d 566, 581 ([Pa.] 2003)). Thus, the main inquiry for determining whether a

16

party is indispensable involves whether justice can be accomplished in the absence of the party. *Id.*; *see also Perkasie Borough Auth*[.] *v. Hilltown T*[*wp.*] *Water* [*&*] *Sewer Auth*[.], 819 A.2d 597, 600 (Pa. Cmwlth. 2003) (holding that 'an indispensable party is one whose rights are so connected with the claims of the litigants that no relief can be granted without infringing upon those rights'). The relevant analysis of whether a party is indispensable requires an examination of the following four factors:

> 1. Do absent parties have a right or interest related to the claim?
>
> 2. If so, what is the nature of that right or interest?
>
> 3. Is that right or interest essential to the merits of the issue?
>
> 4. Can justice be afforded without violating the due process rights of absent parties?

*HYK Constr*[.] *Co*[.], 8 A.3d at 1015. When undertaking this inquiry, the nature of the particular claim and the type of relief sought should be considered. *Id.*

*Rachel Carson Trails Conservancy, Inc. v. Dep't of Conservation & Nat. Res. of Commonwealth*, 201 A.3d 273, 279 (Pa. Cmwlth. 2018).

The Redevelopment Authority and the City are separate entities that perform completely separate functions. Section 4(a) of the URL states:

> There are hereby created separate and distinct bodies corporate and politic, one for each city and one for each county of the Commonwealth, as herein defined. Each such body shall be known as the Redevelopment Authority of the city or the county, as the case may be, but **shall in no way be deemed to be an instrumentality of such city** or county, **or engaged in the performance of a municipal function**. Each such [Redevelopment] Authority shall transact no business or otherwise become operative until and unless a finding is made as hereinafter provided in this section.

17

35 P.S. § 1704(a) (emphasis added). The Pennsylvania Supreme Court further clarified:

> An authority under the [URL] is an agent of the Commonwealth and not of the local government body. As can be seen, the legislature in no uncertain terms has made it clear that **a redevelopment authority is a completely separate entity from the city**. The fact that the mayor of the city is authorized to make the appointment of its members does not make an appointment a matter concerning the internal affairs of the city.

*Herriman v. Carducci*, 380 A.2d 761, 763-64 (Pa. 1977) (emphasis added; citation omitted); *see also City of Phila. v. Schweiker*, 858 A.2d 75 (Pa. 2004).

Here, Atuahene's sole allegation in the Petition was that he was entitled to damages for the City's purported 2004/2005 demolition at the Property. His claim is unrelated to the Redevelopment Authority's 2012 condemnation of the Property pursuant to its eminent domain power. Because the City and the Redevelopment Authority are distinct entities with separate duties, only the latter of which is implicated here, the City's involvement is not necessary to afford meaningful relief in the instant matter. Accordingly, the City is not an indispensable party.

### b. *De facto* Taking/Inverse Condemnation

> A *de facto* or inverse condemnation . . . involves a situation where a governmental agency, by its conduct, may or may not physically invade property. The owner contends that such conduct impinges on the beneficial use of his property, resulting in a diminution of value for which he seeks compensation.

*Stein v. City of Phila.*, 557 A.2d 1137, 1138 (Pa. Cmwlth. 1989) (emphasis added). "[T]here is no bright line test to determine when a government action results in a *de facto* taking; each case turns on its own facts." *Parker Ave., L.P. v. City of Phila.*, 122 A.3d 483, 488 (Pa. Cmwlth. 2015) (quoting *In re Borough of Blakely*, 25 A.3d

18

458, 465 (Pa. Cmwlth. 2011)). However, "[t]his deprivation must be caused by the actions of an entity with eminent domain powers." *York Rd. Realty Co., L.P. v. Cheltenham Twp.*, 136 A.3d 1047, 1050 (Pa. Cmwlth. 2016) (quoting *Borough of Blakely*, 25 A.3d at 463).

> In order to establish a *de facto* taking, the burden is on the property owner to show that exceptional circumstances exist which substantially deprive the property owner of the beneficial use and enjoyment of his or her property. Further, the property owner must show that this substantial deprivation was occasioned by the actions of an entity clothed with the power of eminent domain, resulted from the exercise of that power and that the damages sustained by the owner were the immediate, necessary and unavoidable consequence of that exercise. **The mere fact that a taking has occurred does not necessarily give rise to a cause of action under the Code because acts not done in the exercise of the right of eminent domain cannot serve as the basis of a proceeding in eminent domain**. Thus, when determining whether a compensable taking under the Code has occurred, **the dispositive question becomes whether the act complained of was, in fact, an exercise of eminent domain power**.

*Hill v. City of Bethlehem*, 909 A.2d 439, 444 (Pa. Cmwlth. 2006) (bold and italic emphasis added; citations and footnote omitted).

> The *Hill* Court clarified:

> The eminent domain power is the power to take property for public use. *Estate of Blose ex rel. Blose v. Borough of Punxsutawney*, 889 A.2d 653 (Pa. Cmwlth. 2005). 'The police power, on the other hand, involves the regulation of property to promote the health, safety, and general welfare of the people.' *Id*. at 657 (quoting *Balent v. City of Wilkes-Barre*, . . . 669 A.2d 309, 314 ([Pa.] 1995)).

*Hill*, 909 A.2d at 444. In fact, this Court has concluded that the City "has not 'taken' anything when it asserts its police power to abate a nuisance, and need not provide compensation when it destroys the value of the property by abating the nuisance."

19

*Stein*, 557 A.2d at 1139-40; *see also In re Condemnation by the Dep't of Transp., of Two (2) Billboards Located on T.R. 209*, 452 A.2d 83 (Pa. Cmwlth. 1982) (where the Commonwealth removed violative billboards as part of its police power, rather than eminent domain power, the owner was not entitled to compensation under the Code).

Notably, there is no record support for Atuahene's claim in the Petition that the City demolished the Property in 2004/2005, or that the Redevelopment Authority was involved. In fact, the Redevelopment Authority responded that it did not "have any involvement with any alleged demolition, *de facto* taking and/or inverse condemnation which is alleged to have occurred in 2004[/2005]." Redevelopment Authority Prelim. Obj. at 3.

> In *Linde Enterprises, Inc. v. Lackawanna River Basin Sewer Authority*, 911 A.2d 658 (Pa. Cmwlth. 2006), this Court held that when reviewing preliminary objections to a petition for the appointment of viewers,
>
>> [t]he trial court must determine whether, as a matter of law, the **averments** of the petition for the appointment of viewers, **taken as true, in addition to any stipulated facts, are sufficient to state a cause of action for a *de facto* taking**. If not, the preliminary objections must be sustained and the petition dismissed or allowed to be amended. **If the averments, taken as true, *might* establish a *de facto* taking, the trial court must take evidence by depositions, or otherwise,** *so that a judicial determination might be made*.
>
> *Id.* at 661 (quoting *Hill* . . . , 909 A.2d [at] 443 . . .) (bold emphasis added).

*York Rd. Realty Co.*, 136 A.3d at 1052.

Here, even if the trial court had accepted Atuahene's allegations in the Petition as true, he clearly seeks damages for *the City's exercise of its police power*, rather than damages related to *the Redevelopment Authority's exercise of its eminent domain power*. Because Atuahene's Petition did not contain facts to support a *de*

*facto*/inverse condemnation claim or a challenge to the Redevelopment Authority's payment of estimated just compensation into the trial court, the Petition was not properly before the trial court in the first instance.[16] *See Hill*. Therefore, regardless of whether Atuahene's Petition was timely filed, the trial court did not err by denying Atuahene discovery and/or a hearing relative to the City's 2004-2005 *de facto* taking/inverse condemnation and dismissing the Petition.[17]

**Conclusion**

The trial court's order is affirmed in part, and vacated and remanded in part. The portion of the trial court's order dismissing Atuahene's Petition is affirmed. The portion of the trial court's order dismissing Atuahene's Preliminary Objections is vacated, and this matter is remanded for the trial court to conduct a hearing or order the taking of discovery relative to whether the Redevelopment Authority properly served Atuahene with notice of the Declaration.

_____
ANNE E. COVEY, Judge

---

[16] Atuahene's remedy for such action would have been an action in trespass to recover damages for the condemnation and wrongful demolition. *See Paul v. City of Phila.*, 427 A.2d 1292 (Pa. Cmwlth. 1981); *City of Pittsburgh v. Readie*, 403 A.2d 192 (Pa. Cmwlth. 1979).

[17] Although the trial court dismissed the Petition as time-barred, it is well settled that "[t]his Court . . . may affirm a trial court's order on grounds other than those on which the trial court based its decision." *Twp. of Bristol v. 1 Enters., LLC*, 177 A.3d 1045, 1051 n.7 (Pa. Cmwlth. 2018).

21

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Philadelphia Redevelopment      :
Authority of City of Philadelphia    :
                                        :
          v.                          :
                                        :
Steve Atuahene,                :     No. 332 C.D. 2019
              Appellant     :

O R D E R

AND NOW, this 22nd day of April, 2020, the Philadelphia County Common Pleas Court's (trial court) January 24, 2019 order is affirmed in part, and vacated in part. The portion of the trial court's order sustaining the Philadelphia Redevelopment Authority of the City of Philadelphia's (Redevelopment Authority) Preliminary Objections to Steve Atuahene's (Atuahene) Petition for Appointment of a Board of Viewers (Petition) and dismissing the Petition is affirmed. The portion of the trial court's order dismissing Atuahene's Preliminary Objections is vacated, and this matter is remanded for the trial court to conduct a hearing or order the taking of discovery regarding whether the Redevelopment Authority properly served Atuahene with notice of the Declaration of Taking.

Jurisdiction is relinquished.

_____
ANNE E. COVEY, Judge